**Eva Flores GONZALEZ, as next friend of Rosa Gonzalez, a minor, Appellant,**

**v.**

**TEXAS EMPLOYERS INSURANCE AS-SOCIATION, Appellee.**

No. 18313.

Court of Civil Appeals of Texas, Dallas.

April 11, 1974.

Rehearing Denied May 9, 1974.

Edwin J. Lamberty, Jr., Patterson & Lamberty, Inc., Dallas, for appellant.

Edward E. Crowell, Jr., Gardere, Porter & DeHay, Dallas, for appellee.

GUITTARD, Justice.

Our questions are (1) whether an interpleading stakeholder, who admits liability and offers to pay money into court but does not actually do so, is protected against further liability by payment of the money to one of the claimants under a judgment which has since been reversed, and (2) whether a recognized illegitimate child is entitled to the death benefits provided for a child of a deceased employee under the Workmen's Compensation Act by virtue of the Equal Protection Clause of the Fourteenth Amendment. We hold that the stakeholder's liability is not discharged by such payment and that a recognized illegitimate child is entitled to the same benefits as any other child. Accordingly, we reverse a summary judgment for the defendant stakeholder and remand with instructions to grant the motion for summary judgment presented on behalf of the alleged illegitimate child.

The present appeal is a sequel to our decision in Flores Gonzalez v. Viuda de Gonzalez, 466 S.W.2d 839 (Tex.Civ.App.— Dallas 1971, writ ref'd n. r. e.), which was a suit for death benefits under the Workmen's Compensation Act. The claimants in that suit were the mother of the deceased employee, his alleged common-law wife, and his daughter by the alleged common-law wife, all of whom made claim against Texas Employers Insurance Association. The Association filed a counterclaim and interpleader against all the claimants, alleging that it was willing to pay full death benefits but could not determine to which of the conflicting claimants benefits should be paid without subjecting itself to multiple recoveries. It alleged that the full amount payable was tendered into court and prayed that the court make a proper determination and direct the disposition of the funds, but it did not actually pay the money to the clerk.

On September 9, 1970, the trial court granted the motion for summary judgment of the deceased employee's mother and rendered judgment in her favor against the Association for the full amount of benefits on the ground that as a matter of law no common-law marriage existed and the employee's daughter was illegitimate. The alleged common-law wife perfected an appeal on behalf of herself and her daughter, but filed no supersedeas bond. On October 29, 1970, the Association paid the full amount of the judgment to the employee's mother and obtained a release from her. The alleged common-law wife proceeded with the appeal and this court reversed the judgment and remanded the case for further proceedings on the ground that a fact issue existed with respect to common-law marriage.

After the case was returned to the trial court the employee's mother, who had received the money, nonsuited her claim.

The alleged common-law widow also non-suited her individual claim and disclaimed any right to the benefits on her own behalf, but she continued to prosecute the suit as next friend for her daughter, on whose behalf she claimed the entire benefits as the only statutory beneficiary. The Association then filed a motion for summary judgment, alleging that payment of the benefits under the former judgment discharged it as a matter of law from any further liability. The trial court granted this motion and rendered judgment that the next friend take nothing on behalf of her daughter. She appeals, contending in her single point of error that the trial court erred because the daughter was entitled to the benefits as a matter of law.

The Association seeks to uphold the summary judgment in its favor on the theory that in absence of any objection to its pleading admitting liability and offering to pay the money into court, that pleading was equivalent to actual payment of the money and its later payment in compliance with the judgment effected a full discharge of its liability. In support of the contention that the offer is equivalent to payment, the Association cites Williams v. Wright, 20 Tex. 500, 503 (1857), which we do not consider controlling. The question there was whether interpleader relief could be granted to a defendant who had not actually brought the money into court, and the supreme court held that this matter could not be raised by motion to strike the answer or by a general demurrer which did not specify the particular objection. The opinion cannot properly be interpreted to hold that in the absence of such an objection the offer afforded the interpleading party all the protection he would have had by actual payment. The opinion is consistent with the view that in absence of objection the action may proceed, but that no discharge of liability occurs until the money is actually paid.

Likewise, in Royal Neighbors of America v. Fletcher, 230 S.W. 476 (Tex.Civ.App. —Amarillo 1921, no writ), the interpleading defendant, who admitted liability and offered to pay the money into court, was held to have "placed itself in the attitude of a mere stakeholder," and thus to have no standing to appeal, but no question was presented concerning discharge of its liability.

The Association points out that it was in the position of a stakeholder with no right to appeal and no right to supersede the judgment by giving a bond under Texas Rules of Civil Procedure, rule 364(a), but that the appellant on the former appeal did have the right to supersede, as held in Burch v. Johnson, 445 S.W.2d 631 (Tex. Civ.App.—El Paso 1969, no writ) and Dallas Bank & Trust Co. v. Thompson, 78 S. W.2d 740 (Tex.Civ.App.—Dallas 1935, no writ). Consequently, the Association argues, the duty rested on the appellant as next friend for the minor claimant rather than on the Association to protect the fund pending appeal by a supersedeas bond, and that in view of her failure to do so the minor cannot now complain if payment of the money in accordance with the judgment leaves her only a claim against the party who received the money. This argument might be persuasive if the Association had paid the money into court to abide the result of the litigation and the clerk had paid it out under the court's order, as was the case in Zachary v. Overton, 157 S.W.2d 405 (Tex.Civ.App.—Galveston 1941, writ ref'd w. o. m.). It does not reach the question of whether the liability of the interpleading party is discharged without payment into court. In Zachary, and all the other cases cited by the Association in which the stakeholder's liability was held to be discharged, the stakeholder protected itself against multiple liability by paying the money into court in the usual manner of an interpleading party. Forest Park Lanes, Ltd. v. Keith, 441 S.W.2d 920, 940 (Tex.Civ.App.—Fort Worth 1969, no writ); Hartman v. Crain, 398 S.W.2d 387 (Tex.Civ.App.—Houston 1966, no writ);

Royal Palms Corp. v. A. Minella Plumbing Supplies, Inc., 355 S.W.2d 585 (Tex.Civ. App.—Houston 1962, no writ).

The crucial question is whether payment to a party under a judgment pending appeal is equivalent to payment into court. We hold that it is not, and, more particularly, that payment to one party under a judgment does not discharge liability to a different party that may be established after reversal of that judgment. A judgment is not final so long as an appeal is pending, whether or not it has been superseded. Texas Trunk R. Co. v. Jackson, 85 Tex. 605, 22 S.W. 1030 (1893). Consequently, no right can be asserted under a judgment that has been reversed. On the other hand, if the money is paid into court to abide the result of the litigation, responsibility for the fund is shifted to the court and further liability to the parties is discharged.

The Association points out that if it had paid the money into court, the court or its clerk would have had the same problem concerning payment of the money when the appeal was taken without superseding the judgment. We need not consider what measures would have been available to the court to protect the funds in its hands and the interests of the minor claimant pending appeal. Regardless of whether the court would have had to pay out the funds in the absence of a supersedeas bond filed on behalf of the minor claimant, no additional liability could have been imposed on the Association if it had actually placed the money in the custody of the court. Since the Association chose not to do that but to pay it to one of the parties under a judgment, and that judgment has been reversed, we hold that its liability has not been discharged.

### Claim of illegitimate child

The next friend contends that the trial court erred not only in rendering judgment for the Association, but also in failing to grant the next friend's motion for summary judgment because the only fact issue remaining is that of common-law marriage and that issue is no longer material because the alleged common-law wife has disclaimed and the minor daughter is entitled to recover the statutory benefits whether legitimate or not under Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), which holds that denial of such recovery to an illegitimate child would be contrary to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. We agree.

The Association contends that Weber is not controlling because of the difference between the Texas Workmen's Compensation Act and the Louisiana Act considered in Weber. It points out that under the Louisiana Act benefits are available only to children shown to be dependent, while under Tex.Rev.Civ.Stat.Ann. art. 8306, § 8a (Vernon Supp.1974) death benefits are payable to minor children "without regard to the question of dependency." The Association argues further that § 8a provides that death benefits "shall be distributed among the beneficiaries as may be entitled to the same as hereinbefore provided according to the laws of descent and distribution of this State," and that the Texas law of descent and distribution provides that an illegitimate child shall inherit from his mother but not from his father unless legitimated by the marriage of his parents. Tex.Prob.Code Ann. § 42 (Vernon 1956). Consequently, the Association argues, this case is controlled not by Weber but by Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1917, 28 L.Ed.2d 288 (1971), in which a Louisiana statute excluding illegitimate children from inheritance was held not to be a violation of the Equal Protection Clause.

This argument is not persuasive. It bears too close a resemblance to those "finely carved distinctions" advanced unsuccessfully in Weber to distinguish the Supreme Court's previous holding in Levy

v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), that an illegitimate child cannot be excluded as a beneficiary in a statutory action for wrongful death. Under both *Levy* and *Weber* the test for determining the validity of state statutes under the Equal Protection Clause is whether the statutory classification bears a rational relationship to the purpose of the statute. The specific holding in *Weber* is that the inferior classification of dependent unacknowledged illegitimates has no significant relationship to the recognized purposes of the Workmen's Compensation statutes. Applying that test here, we cannot escape the conclusion that the discriminatory exclusion of recognized illegitimate children bears no significant relation to the purpose of the Texas Workmen's Compensation Act. No rational basis for this discrimination is found in our statutory provision of·benefits to minor children without regard to dependency or by the provision for distribution of benefits according to the law of descent. Neither can a rational basis for such discrimination in this case be found in possible problems of locating illegitimate children and determining uncertain claims of parentage. In *Weber* those problems were said to be lessened by the statutory requirement of dependency. In this case, although our statute does not require dependency, such problems are lessened to the same extent by undisputed proof that the minor claimant, together with her mother, lived with the deceased employee and was recognized by him as his child. We express no opinion on the rights of an illegitimate child under other circumstances.

The Association also insists that we should not apply the *Weber* ruling retrospectively to this case. It points out that *Weber* was decided on April 24, 1972, three years after the deceased employee in this case was killed and more than a year after the judgment for the employee's mother was paid by the Association, and that under the Texas Workmen's Compensation Act as construed before *Weber*, ille-

gitimate children were not recognized as beneficiaries. The only authority cited against retrospective application is Stokes v. Aetna Casualty & Surety Co., 232 So.2d 328 (La.App.1969), the very decision reversed in *Weber*. Although the Supreme Court did not pass expressly on the question of retrospective effect of the decision, it did so by necessary implication in reversing the judgments of the Louisiana courts.

■ Even if we were at liberty to accept the reasoning in *Stokes*, it cannot prevail here because no rights of the Association became vested before the date of the *Weber* ruling. The occurrence of this accident before the ruling in *Weber* does not prevent retrospective application of that decision because, of course, the same situation was presented in the *Weber* case itself. The judgment of September 9, 1970, in this case created no vested rights so long as it was subject to reversal on appeal, and the Association's payment under that judgment provided no protection for reasons discussed earlier in this opinion. Decisions of the Supreme Court invalidating state laws on "novel constitutional grounds" can be refused retrospective operation only when a judgment based on a law subsequently declared unconstitutional has become final. *See* Linkletter v. Walker, 381 U.S. 618, 627, 85 S.Ct. 1731, 14 L. Ed.2d 601 (1965); Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S. Ct. 347, 85 L.Ed. 327 (1941); United States v. Schooner Peggy, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801); Currier, Time and Change in Judge-Made Law: Prospective Overruling, 51 Va.L. Rev. 201 (1965). We hold that a judgment that is not final because of the pendency of an appeal does not give rise to vested rights that prevent retrospective operation of a change in the law by judicial decision subsequent to the reversal. A different question would be presented if no appeal had been perfected or even if the Association had paid its money in reliance on a compromise settlement agreement ap-

proved by the court or the Industrial Accident Board.

For the reasons stated, we hold that the trial court erred in sustaining the Association's motion for summary judgment and in failing to sustain the motion of the minor claimant. Accordingly, the case is reversed and remanded to the trial court with instructions to sustain the motion for summary judgment of the minor claimant and to render judgment in her favor for the amount of death benefits admitted to be payable, together with interest as provided by law.

Reversed and remanded with instructions.