TEXAS IRON WORKERS' PENSION FUND, Appellant,

v.

Edward A. TREFGER, Appellee.

No. 2-82-154-CV.

Court of Appeals of Texas, Fort Worth.

May 19, 1983.

Fulbright & Jaworski and Murray Fogler, Houston, for appellant.

Ulis L. Whitecotton, Fort Worth, for appellee.

Before HUGHES, JORDAN and SPURLOCK, JJ.

OPINION

JORDAN, Justice.

This appeal basically involves the question of whether or not an award of attorney's fees to a retired iron worker in a suit against appellant to recoup and have reinstated certain monthly pension benefits was an abuse of discretion.

The judgment is affirmed.

The Texas Iron Workers' Pension Fund (Pension Fund) was established by collective bargaining between iron workers unions and industry employer associations to provide pension benefits to disabled or retired iron workers. The Pension Fund is administered by American Benefit Plan Administrators, Inc., but the decisions concerning eligibility for benefits are made by a twenty-eight member Board of Trustees (Trustees) comprised of both union and management personnel.

The pension plan is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101 (1982), et seq.

Appellee Edward A. Trefger, who had been an iron worker since 1955, elected, at age 55, to take early retirement. His application for pension benefits was approved and he began receiving $131.00 per month in March, 1978.

The Texas Iron Workers' Pension Fund Plan, in Article VII, § 8, generally prohibits an early retiree from returning to work in any capacity, as an employee or as a self-employed worker, in the same or related business as his employer. This same section also prohibits employment or self-employment of an early retiree in any business which is or may be under the jurisdiction of the Union (Iron Workers' Union). Section 9 of Article VII provides for suspension of retirement benefits up to six months of any early retiree who, after early retirement, is employed in the type of work described and prohibited by Article VII, § 8.

The Pension Plan does not define the terms "employment", "self-employment", or "related business".

In July of 1978, appellee wrote a letter to a union official on a matter unrelated to his pension, but in this letter he stated that he and his sons had started a business of sawing and core drilling concrete. This letter was referred to William A. Rhodes, Jr., the account executive who administered the Pension Fund as an employee of the administrators of the Fund, American Benefit Plan Administrators, Inc. Rhodes, after conferring with the chairman and secretary of the Board of Trustees of the Pension Fund, decided that appellee was employed in the "construction industry", and thus was in violation of the pension provisions contained in Article VII, § 8 of the Pension Plan. Rhodes' decision was affirmed and ratified by the entire Board of Trustees, and Trefger's pension benefits were immediately suspended.

Appellee attempted to appeal the decision to suspend his retirement benefits by the Board of Trustees by a letter dated September 6, 1978. In this letter he stated that he received "no pay only dividends" from his work with his sons in the new business. The full Board of Trustees reviewed this letter and upheld the suspension of benefits.

Appellee then filed this suit for all benefits due him and for attorney's fees. After suit was filed and after appellee's deposition was taken, appellant decided that Trefger was right and that his involvement in his son's construction business did not constitute employment because Trefger received no compensation of any kind, including dividends, for his occasional help in the son's business.

The Board of Trustees of the Pension Fund then decided to reinstate Trefger's monthly pension benefits and to reimburse him for all of the pension payments they had withheld. Appellee insisted on payment of his attorney's fees, which appellant refused, so all of the funds withheld up to that time were paid into the registry of the court in August of 1981. From that time forward all monthly pension payments due Trefger have been paid into the registry of the court.

The cause was tried to the court without a jury and the only issue was whether or not either party was entitled to attorney's fees. Both appellant and appellee had sought attorney's fees. The court denied appellant's claim for attorney's fees and awarded appellee $3,000.00 for his attorney's fees.

The trial court, in its Findings of Fact, found the basic facts involved in this cause, as set out earlier in this opinion, and found that appellee was entitled to recover attor-

ney's fees of $3,000.00 for services rendered by his attorney through August, 1981, the date on which the defendant tendered payment of the accrued monthly pension payments. The court in its findings also found that appellant Texas Iron Workers' Pension Fund is capable of paying the award of attorney's fees to appellant, and that appellant is not entitled to payment of its attorney's fees by appellee.

The court also found that appellant's actions in terminating and withholding appellee's monthly pension for the period from September, 1978 through August, 1981 was "wrongful, intentional, willful, arbitrary, capricious, and done in bad faith."

Appellant contends vigorously, in urging its sole point of error, that the finding by the trial court that appellant's actions in suspending the pension payments was arbitrary, capricious and done in bad faith, was not supported by any evidence and constituted an abuse of discretion by the court. Appellant takes the position that this finding by the trial court was the only reason for its award of attorney's fees to appellee.

■ We are inclined to agree with appellant's position that the actions of appellant in suspending appellee's pension benefits were not arbitrary, capricious or done in bad faith. We don't think the evidence supports any finding that the Board of Trustees, in making the suspension decision, was motivated by spite, ill will, capriciousness, or bad faith. The evidence shows, instead, that because of two letters written by appellee himself, they made a mistake in deciding that appellee was employed in the construction business and thus ineligible for retirement benefits. Upon discovering their mistake, the Trustees immediately reinstated the benefits and offered to pay to appellee all monthly payments which had previously been withheld.

Appellant seems to take the position that before the court could award appellee attorney's fees that the court must find that the actions of the Board of Trustees was arbitrary, capricious, and made in bad faith, and since the evidence does not suppose such a finding, there can be no award of

attorney's fees. It is at this point that we disagree with appellant.

■ The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101 (1982), et seq., in § 1132(g)(1) provides, with respect to attorney's fees, that "In any action under this title ... by a participant, beneficiary, or fiduciary, *the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.*" (Emphasis added.) This section of the act (ERISA), by its plan and unequivocal language, leaves the question of awarding attorney's fees entirely to the discretion of the court. The statute does not say that the award of attorney's fees must be based on any specific finding or circumstance. The matter simply rests in the sound discretion of the court based on the facts in each case. *See Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255 (5th Cir.1980); *Marquardt v. North Am. Car Corp.,* 652 F.2d 715 (7th Cir.1981); and *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344 (8th Cir.1980).

In *Iron Workers Local No. 272 v. Bowen, supra,* 624 F.2d at 1266, the Fifth Circuit Court of Appeals suggested the following factors or criteria to be used by trial courts in exercising their discretion concerning attorney's fees under § 1132:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

The court in *Bowen,* after listing the facts to be considered by the trial court, also said: "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502g[1132g]."

While under the evidence in this case we do not think either party acted in bad faith, we hold that criteria numbers 2, 3, and 4 of those set out in *Iron Workers Local No. 272 v. Bowen, supra,* are present in this case, and also that considering the relative merits of the parties' positions, and the purpose of the Employee Retirement Income Security Act (ERISA), the award of attorney's fees to appellee was proper and not an abuse of discretion.

In *Landro v. Glendenning Motorways, Inc., supra,* 625 F.2d at 1356, the court, in upholding an award of attorney's fees under § 1132(g) of ERISA, said, in part:

> The award was assessed against the employer defendant only, since "it was primarily because of the employer's actions that plaintiffs were required to seek redress in court;" ... Glendenning, the employer defendant, has appealed this ruling, arguing that because there has been no showing that it acted in bad faith in denying appellees credit for their Moland years, the district court abused its discretion in assessing appellees' attorney's fees against it. Since 29 U.S.C. § 1132(g) clearly commits the question of allowance of attorney's fees in suits under § 1132 to the discretion of the district court, we will of course reverse that court's determination of the question only for abuse of discretion. We find none here.

The court in *Landro* also said, in language which is particularly important for our purposes:

> [W]e think that § 1132(g), like the rest of ERISA, is remedial legislation that should be construed liberally in favor of those persons it was meant to benefit and protect, namely, participants in and beneficiaries under covered pension and welfare plans; persons, in short, like appellees, who are specifically permitted by § 1132(a) and (f) to sue in the federal courts to enforce their rights under their pension plans. *Like the provisions authorizing attorney's fees awards in suits under other federal remedial legislation, § 1132(g) should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."* [Authorities omitted] ... *The mere absence of bad faith on the part of the losing defendant is not such a "special circumstance;"* ... [Emphasis added.]

The language in *Landro* is particularly applicable to this case and we think compels a holding that even though, as here, there is no evidence of bad faith, capriciousness or any other evil intent, the court may still, in its discretion and under circumstances shown here, award attorney's fees to either party. The entire ERISA, including § 1132(g), is to be liberally construed so as to accomplish its aims in aiding and abetting those entitled to pensions.

The judgment is affirmed.