Motion for Rehearing Overruled; Affirmed, in Part, and Reversed and
Remanded, in Part; Opinion of July 10, 2003, Withdrawn and









Motion for Rehearing Overruled; Affirmed, in Part, and
Reversed and Remanded, in Part; Opinion of July 10, 2003, Withdrawn and
Substitute Opinion filed December 11, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00768-CV

____________

 

JEAN HEGGY, Appellant

 

V.

 

AMERICAN TRADING EMPLOYEE
RETIREMENT ACCOUNT PLAN,
Appellee

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 95-61451

 



 

S U B S T I T U T E  
O P I N I O N   O N   R E H E A R I N G

Jean Heggy appeals the trial court=s denial, in part, of her
motion for summary judgment and granting, in part, of summary judgment in favor
of American Trading Employee Retirement Account Plan (AAmerican@).  American appeals the denial, in part, of its
motion for summary judgment.  Jean=s motion for rehearing is
overruled.  This court=s opinion issued on July 10,
2003, is withdrawn, and this opinion is substituted in its place.  We affirm, in part, and reverse and remand,
in part.  








                                                I. 
Background

This is the second time this
case has been before this court.  Robert Heggy, who was employed by American, designated his then
current wife, Jean, as the beneficiary of his retirement account.  On February 14, 1992, Robert retired from
American.  On July 26, 1994, Robert and
Jean were divorced.  In 1994, Robert
started receiving monthly payments under his retirement plan in the amount of
$1,360.86.  On May 21, 1995, Robert
married Catherine.  On October 31, 1995,
Robert died after receiving only 14 monthly payments.  The total amount remaining in the retirement
account at the time of Robert=s death was $144,251.61.  Although Robert had married Catherine, he
never removed Jean as the designated beneficiary under the plan.

Both Jean, as designated beneficiary, and Catherine, as
Robert=s wife at the time of his
death, claimed entitlement to the proceeds of the retirement account.  On December 21, 1995, American filed an interpleader. 
Catherine filed a motion for summary judgment seeking all remaining
account benefits.  Jean, however, did not
move for summary judgment.  On July 31,
1997, the trial court granted Catherine=s motion for summary
judgment.  On September 8, 1997, the
trial court ordered American to deposit all of Robert=s accumulated benefits into the
registry of the court, directed the clerk to disburse those funds to Catherine,
and ordered American to tender all future payments to Catherine.  The trial court further awarded American
attorney fees incurred in bringing the interpleader.  

In accordance with the trial court=s order, American started
making monthly payments to Catherine.  On
June 17, 1999, the trial court dismissed all remaining causes of action, making
the September 8, 1997 order a final judgment. 
Jean appealed the final judgment to this court, asking that the judgment
entered in Catherine=s favor be reversed.  See Heggy v.
American Trading Employee Retirement Account Plan, 56 S.W.3d 280 (Tex. App.CHouston [14th Dist.] 2001, no
pet.) (AHeggy I@).  Jean, however, did not supersede the
judgment.  Nor did she seek relief
against American in her appeal.  








While the appeal was pending in this court, Jean=s attorney advised American
that Jean had obtained an order from the 309th District Court that she is a 50%
owner of Robert=s American benefits.  Jean=s attorney further advised that
if Jean were successful on appeal, she would look to American to pay the full
amount of all the benefits to which she was entitled.  American filed a motion for clarification
with this court advising us of the 309th court=s order and requesting Athat if this Court believes
[American] should do something other than continue to make payments, that it so
clarify the order under appeal and make such orders as necessary to avoid
double liability.@  The motion was carried with the case. 

American then requested an order from the trial court
directing it to make the remaining payments to the registry of the court
pending appeal.  On March 6, 2001, the
trial court granted American=s motion.  Catherine received monthly payments in the
amount of $1,360.86 from September 1997 through March 2001.  








We reversed the summary judgment in favor of Catherine and
held that under ERISA (Employee Retirement Income Security Act of 1974, 29
U.S.C. '' 1001B1461 (1999 & Supp. 2003)),
Jean was entitled to receive all benefits remaining in Robert=s account at the time of his
death.[1]  Heggy I,
56 S.W.3d at 286.[2]  On remand to the trial court, Jean and
American each moved for summary judgment. 
Jean sought from American all the benefits remaining in the retirement
account at the time of Robert=s death, including amounts
already paid to Catherine, attorney fees, and interest.  American moved for a summary judgment that it
was not liable to Jean for payments it had already made to Catherine and
further sought attorney fees for defending its status as an innocent
stakeholder.  The trial court granted, in
part, and denied, in part, Jean=s and American=s respective motions for
summary judgment.  The trial court
ordered that (1) Jean take nothing on her claim for benefits previously paid or
disbursed to Catherine, (2) Jean recover all funds that American had deposited
in the registry of the court, including accumulated interest, pursuant to the
trial court=s March 6, 2001 order, (3)
American make all future payments into the registry of the court, and the clerk
pay those funds to Jean, (4) Jean take nothing on her claims for attorney fees
and interest, and (5) American take nothing on its claim for attorney fees.  

                                         II.  Standard of Review

To prevail on a motion for summary judgment, a party must
establish that no material fact issue exists and it is entitled to judgment as
a matter of law.  Rhone-Poulnec, Inc. v. Steel, 997 S.W.2d 217, 222 (Tex.
1999).  In conducting this review, we
take as true all evidence favorable to the nonmovant,
and we make all reasonable inferences in the nonmovant=s favor.  KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 478 (Tex. 1999).  When both sides move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review all summary judgment evidence, determine all questions presented,
and render the judgment the trial court should have rendered.  Bradley v. State ex rel.
White, 990 S.W.2d 245, 247 (Tex. 1999).[3]  

                                               III.  Interpleader








Jean argues American is not entitled to interpleader
status because it failed to satisfy all the requirements of Rule 43 of the
Texas Rules of Civil Procedure.  Under
Rule 43, a party who receives multiple claims to funds in its possession may
join all claimants in one lawsuit and tender the disputed funds into the
registry of the court.  Tex. R. Civ.
P. 43; Cable Communications Network, Inc. v. Aetna Cas.
& Sur. Co., 838 S.W.2d 947, 950 (Tex. App.CHouston [14th Dist.] 1992, no
pet.).  A party faced with competing
claims obtains a discharge of liability to the competing claimants by
interpleading the funds.  Petro Source Partners, Ltd. v. 3-B Rattlesnake
Ref. (1990), Ltd., 905 S.W.2d 371, 375 (Tex. App.CEl Paso 1995, writ
denied).  A party is entitled to interpleader relief if three elements are met:  (1) it is either subject to, or has
reasonable grounds to anticipate, rival claims to the same funds; (2) it has not
unreasonably delayed filing its action for interpleader;
and (3) it has unconditionally tendered the fund into the registry of the
court.  Olmos
v. Pecan Grove Mun. Util. Dist., 857 S.W.2d 734,
741 (Tex. App.CHouston [14th Dist.]1993, no
writ).  Failure to satisfy any of these
elements will defeat a petitioner=s standing as an innocent
stakeholder and preclude interpleader relief.  Texas Workforce Comm=n v. Gill, 964 S.W.2d 308, 310 n.3 (Tex.
App.CCorpus Christi 1998, no
pet.).  

Jean does not challenge the first two elements.  In challenging the third element, Jean argues
American did not unconditionally tender the fund or property into the registry
of the court.  Jean complains that
although American paid $21,118.81 into the registry of the court, those funds
were not deposited until after the interlocutory summary judgment order had
been signedCtwo years after the filing of
the petition in interpleader, with American retaining
the balance of the funds and controlling its disbursement.[4]  








If the disputed funds are not actually paid into the
registry of the court, they must be tendered and the tender must be
unconditional in order to be valid.  BankOne, Tex., N.A. v. Taylor, 970 F.2d 16,
25 (5th Cir. 1992); Cockrum v. Cal-Zona Corp., 373 S.W.2d 572, 574 (Tex. Civ. App.CDallas 1963, no writ).  In its petition in interpleader,
American stated that it Aunconditionally offers and is
ready to deposit with the court the remaining benefits of Robert Heggy totaling $144,251.61.@  Although American did not physically deposit
the funds into the registry of the court, it tendered the funds into the
court.  Contrary to Jean=s assertion, only an
unconditional tender, not a deposit, is required.  Security Nat=l Bank of Lubbock v. Washington
Loan & Fin. Corp.,
570 S.W.2d 40, 43 n.4 (Tex. Civ. App.CDallas 1978, writ dism=d).  Therefore, American satisfied the
unconditional tender requirement.  

Jean argues American is not discharged from liability to her
for benefits paid to Catherine.  In
support of this proposition, Jean relies on Gonzalez v. Texas Employers Ins.
Ass=n, 509 S.W.2d 423 (Tex. Civ. App.CDallas 1974, writ ref=d n.r.e.).  In a suit involving claims for death
benefits, the court of appeals in Gonzalez considered whether an
interpleading stakeholder, who admits liability and offers to pay money into
the court, but does not actually do so, is protected against further liability
by payment of the money to one of the claimants under a judgment that has been
reversed.  Id. at 424.  In Gonzalez, the insurance company
filed an interpleader, asserting that it was willing
to pay full death benefits but could not determine which of the conflicting
claimantsCthe mother of the deceased
employee or his common-law wifeCshould be paid without
subjecting itself to multiple recoveries. 
Id.  The trial court
granted summary judgment in favor of the mother, and the common-law wife
perfected an appeal, but did not file a supersedeas
bond.  Id.  The insurance company paid the full amount of
the judgment to the mother and obtained a release from her.  Id. 
The court of appeals then reversed the judgment of the trial court and
remanded the case for further proceedings concerning the issue of common-law
marriage.  Id.  

On remand, the insurance company filed a motion for summary
judgment, alleging that payment of benefits under the first judgment discharged
it as a matter of law.  Id. at
425.  The trial court granted the
insurance company=s motion for summary
judgment.  Id.  On appeal, the insurance company argued the
common-law wife had the burden to protect the fund pending appeal by posting a supersedeas bond and by her failure to do so could not
later complain if the payment of the money in accordance with the judgment left
her with only a claim against the party who received the money.  Id. 









Gonzalez framed the issue as whether
payment to a party under a judgment pending appeal is equivalent to payment
into the registry of the court.  Id.
at 426.  The court held it was not,
explaining:

that
payment to one party under a judgment does not discharge liability to a
different party that may be established after reversal of that judgment.  A judgment is not final so long as an appeal
is pending, whether or not it has been superseded.  Consequently, no right can be asserted under
a judgment that has been reversed.  

Id.  The court further
stated that if Athe money is paid into court to
abide the result of the litigation, responsibility for the fund is shifted to
the court and further liability to the parties is discharged.@  Id. 









We decline, however, to follow the Dallas Court of Appeals= opinion in Gonzalez.  American, seeing two potential claimants to
the retirement account and its potential liability if it made a determination
on its own as to which party was entitled to the benefit payments, did what it
should have done in this scenarioCit interpleaded the funds.  Such action is sufficient to discharge its
liability as to either claimant. 
Moreover, it is incumbent on the losing claimant, not the stakeholder,
to protect the interpleaded funds by filing a supersedeas
bond or otherwise attempting to stay the order or judgment directing payment or
disbursement of the interpleaded funds to the competing claimant.  Therefore, in order to protect the
interpleaded funds, it was necessary for Jean to file a supersedeas
bond or otherwise attempt to stay the payments of the benefits to
Catherine.  Jean=s failure to take any action to
protect the interpleaded funds does not entitle her to now subject American to
the same double liability it sought to avoid when it interpleaded the funds
into the court.[5]  This issue is overruled.  

                                                      A.  Waiver

Jean claims that although she joined American as an appellee in the first appeal and asserted her claim against
American for all benefits remaining at the time of Robert=s death, American waived any
argument that it is not liable to Jean for payments already made to Catherine
because it did not file a brief in the first appeal contesting her claim to the
benefits as beneficiary.  No issue as to
American=s liability had been raised in
the trial court; thus, there was no issue concerning American=s liability in the first
appeal.  Nor did Jean seek any relief
from American in the first appeal and, consequently, cannot rely on its failure
to file an appellate brief to support her waiver argument.  The only issue raised in the first appeal
concerned who, as between Catherine and Jean, was entitled to the
benefits.  American did not waive any
arguments related to its status as interpleader and
liability to Jean for payments made to Catherine.  This issue is overruled.  

                                               B.  Law of the Case








Jean claims our holding in Heggy
I constitutes Alaw of the case,@ and she is, therefore,
entitled to recover the retirement benefits. 
She contends arguments raised by American on remand are the same
arguments presented in its motion for rehearing.  Therefore, according to Jean, those arguments
were considered by the court in its opinion on rehearing and cannot be raised
again on remand.  

The Alaw of the case@ doctrine is the principle
under which questions of law decided on appeal to a court of last resort govern
a case throughout its subsequent stages. 
Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986); Grace v.
Zimmerman, 853 S.W.2d 92, 98 (Tex. App.CHouston [14th Dist.] 1993, no
writ).  Application of this doctrine is
flexible and must be left to the discretion of the court and determined
according to the circumstances of the case. 
Harris County Children=s Protective Servs. v. Olvera, 77 S.W.3d 336, 343 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied); City of Houston v. Precast Structures,
Inc., 60 S.W.3d 331, 337 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  The law of the case doctrine is
intended to achieve uniformity of decision and judicial economy and efficiency
and is aimed at ending litigation.  Hudson,
711 S.W.2d at 630.

The doctrine of law of the case is not applicable here.  Jean did not request any relief against
American in the first appeal.  Although
we granted the rehearing and issued a new opinion, we did not address American=s concerns raised in its motion
regarding payments already made or disbursed to Catherine.  This issue is overruled.  

                                                    C.  Pleadings








Jean contends that because American did not plead (as an
affirmative defense or matter of avoidance) that it was not liable to her for
benefits paid to Catherine, its motion for summary judgment is not supported by
the pleadings.  A party relying on an
affirmative defense must plead that defense. 
Tex. R. Civ. P.
94.  An affirmative defense is a
proposition that the defendant may interpose to defeat the plaintiff=s prima facie case.  Cook Composites, Inc. v. Westlake Styrene
Corp., 15 S.W.2d 124, 137 (Tex. App.CHouston [14th Dist.] 2000, pet.
dism=d).  An affirmative defense does not rebut the
factual proposition of the plaintiffs= pleading, but instead, allows
the defendant to introduce evidence to establish an independent reason why the
plaintiff should not prevail.  Gorman
v. Life Ins. Co. of N. Am., 811 S.W.2d 542, 546 (Tex. 1991).  An affirmative defense generally accepts the
existence at one time or another of a prima facie case but asserts propositions
which, if established, would defeat the plaintiff=s claim.  Cook Composites, Inc., 15 S.W.3d at
137 (quoting Cooper v. Scott Irr. Constr., Inc., 838 S.W.2d 743, 747 (Tex. App.CEl Paso 1992, no writ)).

This action was originally initiated on December 21, 1995,
when American filed its interpleader and
unconditionally tendered the funds into the registry of the court.  The purpose of interpleading funds is to
relieve the interpleader of leaving itself open to
liability if it were to determine on its own which of the competing
complainants was entitled to the disputed funds.  Therefore, in its role as an innocent
stakeholder, American was not claiming any part of the funds and, with respect
to these funds, was not in an adversarial position to Jean.  Moreover, by filing an interpleader,
American did not admit that at any point in time the existence of a prima facie
case against it.  Thus, it was not
necessary for American to seek an independent reason why Jean should not
prevail against it, i.e., assert its interpleader as
an affirmative defense.  This issue is
overruled.

                                  D.  ERISA v. Texas Interpleader
Law

Jean contends her claim for plan benefits as beneficiary and
American=s liability fall within the
parameters of ERISA.  She argues American=s reliance on state interpleader law is misplaced because this court previously
determined ERISA, not state law, governs this case.  In support of this assertion, Jean cites the
discussion in Heggy I that ERISA rather
than the Texas Family Code governs the substantive issues in this case.  

By its express terms, ERISA Ashall supercede any and all
State laws insofar as they may now or hereafter relate to any employee benefit
plan.@  29 U.S.C. ' 1144(a) (1999).  AA law >relates to= an employee benefit plan, in
the normal sense of the phrase, if it has a connection with or reference to
such a plan.@  Shaw v. Delta Air Lines, Inc., 463
U.S. 85, 96B97 (1983).  








State courts have concurrent jurisdiction with United States
District Courts over actions to recover benefits or enforce rights under a plan.  29 U.S.C. ' 1132(e)(1).  ERISA preemption, however, precludes state
law from varying substantive rights and obligations under ERISA.  Pilot Life Ins. Co. v. Dedeaux,
107 S. Ct. 1549, 1557B58 (1987).  Thus, while state courts must apply ERISA
substantive law, they may apply their state=s procedural rules.  Cf. Overcash v.
Blue Cross & Blue Shield of. N.C., 94 N.C. App. 602, 615, 381 S.E.2d 330,
339 (1989) (holding right to jury trial under state law neither Arelates to@ nor conflicts with any
substantive provisions of ERISA).  An interpleader action is a procedural device for an innocent
stakeholder to avoid multiple liability. 
See Petro Source Partners, Ltd., 905
S.W.2d at 375; Cable Communications Network, Inc., 838 S.W.2d at
950.  When this case was on remand to the
trial court, no rights with respect to the benefits under the plan were being
determined; those rights had been determined in Heggy
I.  Instead, American=s potential double liability
and status as an innocent stakeholderCsubject to Texas interpleader lawCwas the only issue for the
trial court=s determination.  Therefore, as related to determining American=s liability to Jean for benefit
payments previously paid to Catherine under court order, Texas interpleader law does not Arelate to@ the benefit plan and is not
subject to ERISA preemption.  This issue
is overruled.  

              IV.  Jean=s and
American=s
Claims for Attorney Fees

Both Jean and American challenge the trial court=s denial of summary judgment of
their respective claims for attorney fees. 
Jean asserts that claims for attorney fees come under ERISA, and as the
prevailing beneficiary, she should recover attorney fees and costs incurred in
establishing entitlement to payment under the plan.  American seeks attorney fees under both ERISA
and Texas interpleader law.  








With respect to attorney fees, ERISA provides:  AIn any action under this
subchapter . . . by a participant, beneficiary, or fiduciary, the court in its
discretion may allow a reasonable attorney=s fee and costs of action to
either party.@  29 U.S.C. ' 1132(g)(1); Gorman v. Life
Ins. Co. of N. Am., 811 S.W.2d 542, 548 (Tex. 1991) (AERISA also authorizes state
courts to award reasonable attorney=s fees and costs to either
party@).  A litigant does not need to be the prevailing
party in order to be eligible for an award of attorney fees under ERISA.  Gibbs v. Gibbs, 210 F.3d 491, 503 (5th
Cir. 2000).[6]  

An innocent stakeholder is entitled to recover its attorney
fees from the deposited funds if it has a reasonable doubt with respect to
which claimant is entitled to the fund.  United
States v. Ray Thomas Gravel Co., 380 S.W.2d 576, 581 (Tex. 1964); Olmos, 857 S.W.2d at 741; Salazar v. San Benito
Bank & Trust Co., 730 S.W.2d 21, 24 (Tex. App.CCorpus Christi 1987, no writ); General
Am. Life Ins. Co. v. Rodriguez, 641 S.W.2d 264, 268B69 (Tex. App.CHouston [14th Dist.] 1982, no
writ).[7]  The innocent stakeholder must prove the
reasonableness of the fees sought.  Foreman
v. Graham, 693 S.W.2d 774, 778 (Tex. App.CFort Worth 1985, writ ref=d n.r.e.).  The award of attorney fees is within the
sound discretion of the trial court.  Olmos, 857 S.W.2d at 741; Daniels v. Pecan Valley
Ranch, Inc., 831 S.W.2d 372, 384 (Tex. App.CSan Antonio 1992, writ
denied).  








It is not necessary to decide whether ERISA preempts Texas interpleader law on the issue of attorney fees.  We conclude that under the facts at hand, the
trial court did not abuse its discretion in refusing to award Jean attorney
fees under either ERISA or interpleader law.  Jean has not shown that American acted in bad
faith in interpleading the retirement benefits. 
See Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1458 (5th Cir. 1995)
(listing factors for consideration in determining if party is entitled to
attorney fees under ERISA, including degree of culpability or bad faith and
whether award of fees would deter other persons from acting under similar
circumstances); Murphy v. Travelers Ins. Co., 534 F.2d 1155, 1164 (5th
Cir. 1976) (holding that any award of attorney fees against stakeholder is
limited to cases where trial court specifically finds stakeholder=s conduct with respect to interpleader action was improvident, vexatious, or
improper); Cable Communications Network, Inc., 838 S.W.2d at 950
(stating Texas courts have uniformly held insurer is not liable for attorney
fees for interpleading insurance proceeds due to conflicting claims).  Jean=s issue on attorney fees is
overruled.

We conclude that as an innocent stakeholder, American is
entitled to recover attorney fees under Texas interpleader
law and ERISA.  See Rhoades v. Casey,
196 F.3d 592, 603 (5th Cir. 1999) (affirming award of attorney fees to ERISA
plan that interpleaded funds); Nickel v. Estes, 122 F.3d 294, 301 (5th
Cir. 1997) (same); Ray Thomas Gravel Co., 380 S.W.2d at 581 (stating
that rule in Texas is innocent stakeholder is entitled to attorney fees).  The trial court, therefore, abused its
discretion in refusing to award American attorney fees.  American=s issue in its cross-appeal is
sustained.  

                       V.  Jean=s
Claim for Prejudgment Interest

Jean asserts she is entitled to prejudgment interest under
ERISA.  The trial court, in its
discretion, may award prejudgment interest in an action under ERISA.  Gorman, 811 S.W.2d at 550.  If prejudgment interest is awarded, the
interest rate to be applied is governed by Texas law.  Id. 









American does not dispute that a trial court has discretion
to award prejudgment interest in ERISA cases; instead, American contends that
prejudgment interest is not allowed in interpleader
actions.  See Phillips v. Petroleum
Co. v. Adams, 513 F.2d 355, 369B70 (5th Cir. 1975) (applying
Texas interpleader law and stating interpleader is not responsible for prejudgment interest
beyond time at which it tendered funds into court); Monarch Tile Sales v.
Frost Nat=l Bank, 496 S.W.2d 254, 256 (Tex.
App.CSan Antonio 1973, no writ)
(holding there is no statutory authority to support award of prejudgment
interest on interpleaded funds).[8]  

Jean, however, seeks prejudgment interest under ERISA on the
funds American paid to Catherine, not the interpleaded funds.  Nonetheless, because Jean cannot recover from
American the funds paid to Catherine, she cannot recover prejudgment interest
on those amounts.[9]  This issue is overruled.

                                                VI. 
Conclusion

The trial court abused its discretion in failing to award
attorney fees to American.  Therefore, we
reverse that portion of the judgment and remand that part of the case to the
trial court for a determination of American=s attorney fees.  The remainder of the judgment is
affirmed.  The judgment of the trial
court is, accordingly, affirmed, in part, and reversed and remanded, in part.  

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment
rendered and Substitute Opinion on Rehearing filed December 11, 2003.

Panel
consists of Justices Yates, Hudson, and Frost.











[1]  In Keen v.
Weaver, 2003 WL 21467100, at *5 (Tex. June 19, 2003), the Texas Supreme
Court expressly disapproved of our holding in Heggy
I to the extent that it conflicts with its application of federal common
law of waiver.  Keen, however, has
no bearing on the current appeal before us. 






[2]  Although Jean
had requested only a remand, we rendered judgment for her.  American filed a motion for rehearing arguing
that by rendering judgment we effectively granted summary judgment for Jean
against American even though she had not moved for summary judgment in the
trial court.  On August 9, 2001, we
granted American=s motion for rehearing and withdrew our earlier
opinion, reversing and remanding the case to the trial court.  Although American requested that we address
its liability for payments made to Catherine, we did not do so.  





[3]  Jean moved for
a traditional summary judgment.  American
moved for both a traditional summary judgment and a no-evidence summary
judgment.  However, we need not address
American=s no-evidence summary judgment.  





[4]  Although
American paid $21,118.81 into the registry of the court, the amount of benefits
actually accumulated was $29,938.92 (22 payments of $1,360.86 from December
1995 through August 1997).  





[5]  Jean also
relies on our decision in Northshore Bank
v. Commercial Credit Corp., 668 S.W.2d 787 (Tex. App.CHouston [14th Dist.] 1984, writ ref=d n.r.e.).  In Northshore
Bank, we addressed a similar situation except that after reversal the
successful claimant, Commercial Credit, sought the previously interpleaded
funds from another claimant, Northshore, which had
withdrawn the funds from the registry of the court, not the interpleading
party.  Observing that the previous
judgment had not been superseded pending appeal and the funds had been
withdrawn from the registry of the court, we stated that when the judgment was reversed,
A[Northshore] was holding the
funds without authority and should have returned them into the registry of the
court.@  Id. at
790.  We further explained that when the
judgment was reversed, the trial court could have ordered the withdrawn funds
to be returned to the registry of the court. 
Id.  The fact that the
trial court had not done so did not deprive it, consistent with the exercise of
its equity powers, of the authority to enter judgment that Commercial Credit
recover the funds, still under the control of the court, from Northshore which was wrongfully withholding them.  Id. 
We found Athis result to be consistent with and called for by
the unique procedure to be followed in interpleader
practice.@  Id.  





[6]  The Fifth
Circuit has adopted the following five factors to apply in determining whether
a party is entitled to an award of attorney fees under ERISA:  (1) the degree of the opposing parties= culpability or bad faith; (2) the ability of the
opposing parties to satisfy an award of attorney fees; (3) whether an award of
attorney fees against the opposing party would deter other persons from acting
under similar circumstances; (4) whether the parties requesting attorney fees
sought to benefit all participants and beneficiaries of an ERISA plan or to
resolve a significant legal question regarding ERISA itself; and (5) the
relative merits of the parties= position.  Gibbs,
210 F.3d at 504; Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255 (5th
Cir. 1980); see also Texas Iron Workers=
Pension Fund v. Trefger, 651 S.W.2d 956, 958B59 (Tex.
App.CFort Worth 1983, no writ) (applying five Bowen
factors to determination of attorney fees under ERISA).  The Texas Supreme Court, however, while
recognizing that ERISA authorizes state courts to award attorney fees, did not
address the Fifth Circuit=s Bowen factors in determining whether a party
is entitled to attorney fees.  Gorman,
811 S.W.2d at 548.  





[7]  We recognize there is authority that
an unsuccessful claimant to the interpleaded fund should bear the burden of the
innocent stakeholder=s attorney fees in bringing the interpleader action. 
See, e.g., Beneficial Std. Life Ins. Co. v. Trinity Nat=l Bank, 763 S.W.2d 52, 56 (Tex. App.CDallas 1988, writ denied); Hillhaven, Inc. v. Care One, Inc., 620 S.W.2d
788, 793 (Tex. App.CFort Worth 1981, writ ref=d n.r.e.).  However, the weight of authority in Texas is
the innocent stakeholder is entitled to have the fees paid out of the
interpleaded funds; otherwise, the innocent stakeholder could be subject to a
judgment-proof party who lost the interpleader
action.  General Am. Life Ins. Co.,
641 S.W.2d at 268.  





[8]  See also
Veale v. Rose, 657 S.W.2d 834, 840 (Tex. App.CCorpus
Christi 1983, no writ) (holding that where disputed funds were placed in hands
of escrow agent and were not at defendant=s
disposal, equitable damages in form of prejudgment interest were disallowed); Carter
v. Barclay, 476 S.W.2d 909, 918 (Tex. Civ. App.CAmarillo 1972, no writ) (holding that in view of valid
tender of purchase price into registry of court, no interest would be allowed
on amount tendered).  





[9]  Jean similarly
seeks postjudgment interest for retirement benefits
sought in this appeal.  Because Jean
cannot  from American the payments made
to Catherine, she is not entitled to postjudgment
interest.