Jose Zavala **OLMOS** and Edward
D. Guttman, Individually and
as Trustee, Appellants,

v.

**PECAN GROVE MUNICIPAL UTILITY
DISTRICT** and Pecan Grove
Associates, Appellees.

No. C14–92–00987–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 10, 1993.

Rehearing Denied July 15, 1993.

**736**

Clayton C. Cannon, Houston, for appellants.

J. Michael Lytle, Terrie S. Gerlich, Houston, for appellees.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

CANNON, Justice.

This is an appeal of summary judgments granted in an interpleader action. Appellants Jose Zavala Olmos ("Olmos") and Edward D. Guttman, individually and as trustee, ("Guttman") complain of the granting of summary judgments in favor of Pecan Grove Associates ("Pecan Grove") and the Pecan Grove Municipal Utility District (the "MUD"). Olmos and Guttman also appeal the denial of their cross-motion for summary judgment. We affirm.

### Overview

Guttman bought land from Pecan Grove to develop a subdivision. The property was located within the MUD. Guttman entered a lease/sales contract with the MUD and agreed to provide water, sanitary sewer, and drainage facilities for the subdivision. After construction of the facilities was complete, but before payment of the purchase money to Guttman, he assigned to Olmos his right to payment. Before Guttman and the MUD closed on the facilities, Guttman refinanced his development loan giving the lender a deed of trust on the property as security. Guttman defaulted on the loan, and the lender foreclosed. The lender purchased the property at the fore-closure sale and subsequently sold it to Pecan Grove.

When the MUD sought to pay Olmos pursuant to the contract and assignment, Pecan Grove claimed that its ownership of the property entitled it to the purchase money. The MUD did not pay Olmos, and he sued for breach of contract. The MUD filed an interpleader, adding Guttman and Pecan Grove as defendants.

Pecan Grove moved for summary judgment asking for an award of the purchase money. The MUD filed a motion for summary judgment asking for an award of attorneys' fees. Olmos and Guttman filed a response and cross-motion for summary judgment asking for the purchase money and denial of the MUD's attorneys' fees. The trial court granted Pecan Grove's and the MUD's motions and denied Olmos and Guttman's cross-motion. Olmos and Guttman appeal.

### Facts

On April 12, 1982, Guttman, as trustee for his father-in-law, purchased certain property (the "Property") from Pecan Grove. Recorded along with the deed was an instrument prepared by Pecan Grove entitled "Notice to Purchasers of Real Property" ("Notice to Purchasers"). The Water Code requires a seller to provide this notice to a prospective buyer of real property that is located within a municipal utility district. TEX.WATER CODE ANN. § 50.301 (Vernon Supp.1993). The Notice to Purchasers stated that the property which Guttman was about to purchase was located in the MUD and that:

> The purpose of this district is to provide water and sewer services within the district through the issuance of bonds payable from property taxes and user charges. The cost of these utility facilities is not included in the purchase price of your property, and these utility facilities are owned by the district.

At the time Guttman acquired the Property, no utility facilities were in place.

On June 25, 1985, the MUD and Guttman, as trustee, entered a Sales Agree-

ment and Lease of Facilities ("Sales Agreement") whereby Guttman agreed to install and construct water, sanitary sewer, and drainage facilities ("Facilities") on the Property. In exchange, the MUD agreed to advance Guttman a portion of his construction costs, lease the Facilities until bond money could be raised, and eventually purchase the Facilities. In the Sales Agreement, Guttman purported to own the Property and Facilities:

[Section 3.01](a) The Developer has full legal right and authority to make the sale and lease herein contemplated; the Developer has good and marketable title to all Facilities and properties to be conveyed pursuant to this Agreement; the sale of such Facilities and properties will be made free and clear of all liens....

On April 3, 1986, Guttman, as trustee and developer, recorded a document entitled "Reservations, Restrictions and Covenants" (the "Restrictions"). It read in pertinent part:

[1.03](b) The title conveyed to any property in the Subdivision shall not be held or construed to include the title to the water, gas, electricity, telephone, storm sewer or sanitary sewer lines, poles, pipes, conduits or other appurtenances or facilities constructed by the Developer or public utility companies upon, under, along, across or through ... public utility easements; and the right ... to construct, maintain, repair and operate such systems, utilities, appurtenances and facilities is reserved to the Developer....
[1.03](c) The right to sell or lease such lines, utilities, appurtenances or other facilities to any municipality, governmental agency, public service corporation or other party is hereby expressly reserved to the Developer.

On June 25, 1986, Guttman requested that the MUD assign payment of the remaining funds due under the Sales Agreement to Olmos. The MUD agreed to the assignment as evidenced by the signature of the MUD's president on the request letter.

On August 11, 1986, Guttman, as trustee, transferred the Property on which the Facilities were constructed to Guttman, individually, under an assumption deed. Filed along with the assumption deed was the statutory Notice to Purchasers. That same day, Guttman borrowed $990,000 from American General Investment Corporation ("American General") to refinance his development loan. He executed a Deed of Trust and Security Agreement ("Deed of Trust") in favor of American General. The Property subject to the lien included:

... all buildings or other improvements thereon and hereafter placed thereon, ... and all the estate, right, title and interest of every nature whatsoever of the Grantors in and to all of the foregoing and every part and parcel thereof.

Guttman admitted in his deposition that the Facilities were "improvements."

Guttman defaulted on the loan. On October 6, 1987, American General purchased the Property at a foreclosure sale. The Substitute Trustee's Deed expressly included the same expansive language relating to "improvements" that was in the Deed of Trust. The Substitute Trustee's Deed also provided that American General purchased the property "subject to all ... matters of record which are prior to the Deed of Trust, which affect title thereto, and which are a superior interest therein."

On November 9, 1987, American General sold the Property to Pecan Grove, "subject to ... all restrictions, covenants, [and] conditions ... shown of record...."

In November 1988, the MUD sought to close the sale of the Facilities per the Sales Agreement. Olmos demanded payment from the MUD of the $43,705 purchase money. The MUD's attorney initially believed that Olmos was entitled to the money. In a letter to Guttman and Pecan Grove, dated November 22, 1988, Lynne Humphries, counsel for the MUD, stated that "... Olmos is entitled to the reimbursement due to the assignment to him and the District's acknowledgment of same...." However, Humphries also requested that Guttman and Pecan Grove each execute a General Conveyance of Assets ("Conveyance") "to make sure that anyone who may have any rights, title or

interest in and to the ... water, sewer and drainage improvements ... conveys such to the District."

On January 5, 1989, Guttman executed a Conveyance to the MUD in accordance with Humphries' request. Pecan Grove, however, refused to execute its Conveyance until paid the purchase money. On or about June 27, 1989, the MUD received a formal demand from Olmos for payment of the Sales Agreement funds. On or about July 17, 1989, the MUD received formal notice that Pecan Grove claimed an interest in those funds.

On November 28, 1989, Olmos sued the MUD for breach of contract. On December 19, 1989, the MUD filed its petition in interpleader joining Pecan Grove and Guttman. On January 19, 1990, the MUD deposited the disputed funds into the registry of the court.

Agreeing that the facts were undisputed, the parties filed opposing motions for summary judgment. On May 29, 1992, the trial court (1) granted Pecan Grove's motion and awarded it the purchase money of $43,705, less the MUD's attorneys' fees (2) granted the MUD's motion and awarded it $6,000 in attorneys' fees, and (3) denied Olmos and Guttman's cross-motion.

### Pecan Grove's Summary Judgment Motion

### and

### Olmos and Guttman's Cross–Motion

In point of error two, Olmos and Guttman complain that the trial court erred in granting Pecan Grove's motion for summary judgment. In point one, they complain that the trial court erred in denying their cross-motion.

The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). Neither side contends that there are unresolved fact questions. Therefore, our task on appeal is to determine which side, if any, is entitled to the purchase money under the law. Simply put, Pecan Grove asserts a property right to sell the Facilities to the MUD. In opposition, Olmos asserts a contract right to the purchase money by virtue of his assignment under the Guttman/MUD Sales Agreement.

Pecan Grove argues that it is entitled to the purchase money for the Facilities because it acquired title to the Facilities when it bought the Property from American General. We agree. The summary judgment proof establishes that American General acquired title to the Facilities from Guttman via the foreclosure sale. Pecan Grove, in turn, acquired title to the Facilities from American General.

■ Generally, absent a specific reservation in a deed, buildings and other improvements used in connection with realty in such a way as to constitute appurtenances or fixtures, pass as a matter of course by the conveyance. *Milam v. Coleman*, 418 S.W.2d 329, 331 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.). It has been held that water and sewer facilities in a subdivision are improvements and appurtenances and included in the lien securing a development loan. *Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238, 241 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). Neither of the properties in *Milam* or *Pine* was located in a municipal utility district. However, in the case at bar, title to the Facilities was never severed from the Property and conveyed to the MUD. Therefore, the cases remain apposite.

Pecan Grove's summary judgment proof included *inter alia* (1) the deed of trust from Guttman in favor of American General, (2) the substitute trustee's deed conveying the foreclosed Property to American General, and (3) the warranty deed from American General to Pecan Grove. Olmos and Guttman do not challenge the authenticity of these conveyance documents.

Guttman's deed of trust to secure his loan from American General placed a lien on the Property "together with all buildings and other improvements ... and all the estate, right, title, and interest of every nature whatsoever of the Grantors in and to all of the foregoing...." The substitute

trustee's deed under which American General took title to the Property contained identical language. Finally, the warranty deed conveying the Property from American General to Pecan Grove warranted title to the Property "together with all and singular the rights and appurtenances thereto in anywise belonging." We find the language of these documents sufficient to convey the Facilities.

■ Pecan Grove also included as summary judgment proof the Sales Agreement between Guttman and the MUD. Guttman unequivocally purported to own the Facilities:

> Section 3.01(a). The Developer has full legal right and authority to make the sale and lease herein contemplated; *the Developer has good and marketable title to all Facilities* and properties *to be conveyed pursuant to this Agreement*; the sale of such Facilities and properties will be made free and clear of all liens....

Section 1.01 of the Sales Agreement sets forth the terms under which the MUD would buy the Facilities from Guttman:

> Section 1.01. PAYMENT AND TERMS. Subject to the other terms and provisions hereof, the Developer agrees to sell and the District agrees to purchase all Facilities and properties completed under the Contract *together with all benefits and obligations*, but free and clear of all liens.
>
> \*  \*  \*  \*  \*  \*
>
> Section 1.02. TIME OF CLOSING. The sale of the Facilities shall be consummated by the payment of the purchase price, including interest, within thirty (30) days after the District receives payment for the delivery of its bonds in a sum sufficient to pay the purchase price under this Agreement.... At the time a sale under this Sales Agreement is consummated, the Developer binds and obligates itself ... to execute and deliver ... any instrument of transfer, bill of sale, conveyance, or other instrument or document which may be necessary or desirable in connection with the transfer the Facilities being sold at such time....

We find that the Sales Agreement, by its terms, shows that the MUD and Guttman contemplated Guttman retaining title to the Facilities until closing. Since American General foreclosed before Guttman and the MUD closed on the Facilities, Guttman's title would have passed to American General via the foreclosure sale.

Olmos and Guttman counter with summary judgment proof purporting to show that Guttman never had title to the Facilities, but rather, that title was always vested in the MUD. Therefore, they argue, Guttman had no title to the Facilities to convey through American General to Pecan Grove.

■ Olmos and Guttman offer the Notices to Purchasers that were recorded with the conveyances from Pecan Grove to Guttman and from Guttman, as trustee, to Guttman, individually. In effect, Olmos and Guttman argue that these notices serve a severance of title and conveyance function. The notices declare that "[the] utility facilities are *owned by the district.*" The American General substitute trustee's deed indicated that American General took the Property "subject to all ... matters of record which [were] prior to the Deed of Trust...." Pecan Grove's warranty deed indicated that "this conveyance is made and accepted subject to ... any and all restrictions, covenants, conditions, easements, [and] encumbrances ... shown of record...." Therefore, the argument goes, American General and Pecan Grove were charged with knowledge of the record and could not have acquired title to the Facilities, which was retained by the MUD. They further contend that Guttman's contractual requirement to deliver to the MUD title to the Facilities was a superfluous act because the MUD already had title to the Facilities. We disagree.

Olmos and Guttman have cited us to no statutory or case law authority for the proposition that a recorded MUD Notice to Purchasers somehow reserves to the MUD title to utility facilities. Rather, we believe that the purpose of the Notice to Purchasers is to ensure that prospective buyers of

property located in the MUD are aware that the district owns or will own the utility facilities serving their property. Therefore, the buyer is alerted that he will be liable for taxes, special assessments, and/or user fees. *See generally* TEX.WATER CODE ANN. § 50.301 (Vernon Supp. 1993). The current version of § 50.301 expands the wording of the Notice to Purchasers to clarify that "[the] utility facilities are owned *or to be owned* by the district." *Id.* § 50.301(b). The new wording illustrates the legislature's awareness that the MUD may not always have acquired title to utility facilities before property ultimately subject to MUD taxes and assessments is conveyed. We find no merit to Olmos and Guttman's contention that the recorded Notices to Purchasers somehow vested title to the Facilities in the MUD.

■ Next, Olmos and Guttman offer as summary judgment proof the Restrictions document to show that title to the Facilities was reserved to the MUD. Olmos and Guttman focus on section 1.03(b) which states:

> 1.03(b). The title conveyed to any property in the Subdivision shall not be held or construed to include the title to the water, ... storm sewer or sanitary sewer lines, ... or other appurtenances or facilities constructed by the Developer or public utility companies....

But section 1.03(b) goes on to reserve to the Developer the "right to construct, maintain, repair and operate such systems, utilities, appurtenances and facilities." And section 1.03(c) expressly reserves to the Developer the "right to sell or lease such lines, utilities, appurtenances or other facilities to any municipality, governmental agency, public service corporation or other party."

We find that a conveyance from the developer to a lot purchaser would be subject to these restrictions and would thereby except title to the utility facilities. Such title would be retained by the developer or the MUD, with only the developer possessing the right to construct and sell utility facilities to the MUD. However, we also find

that the rights reserved to the developer by the Restrictions would inure to a successor developer along with the duties and responsibilities the Restrictions impose on the developer. Therefore, American General and then Pecan Grove acquired the rights detailed in the Restrictions just as they assumed the duties and responsibilities there specified. Subsequently, with respect to conveyances from the successor developer to lot purchasers, title to the Facilities would be retained by the successor developer or the MUD.

■ Olmos' summary judgment proof did not establish his right to payment under the Sales Agreement. Olmos' assigned right to payment from the MUD depended on Guttman's performance under the Sales Agreement. However, the summary judgment proof did not establish that Guttman completed all prerequisites to reimbursement. Guttman was required under the Sales Agreement to deliver to the MUD good title to the Facilities. But Guttman lost title to the Facilities when American General foreclosed on his development loan. Unable to deliver good title, Guttman was in breach of his contract with the MUD, and the MUD was released from its obligation to pay Olmos.

In sum, we find that Pecan Grove established its right to judgment as a matter of law. The trial court did not err in granting Pecan Grove's motion for summary judgment or in denying the Olmos/Guttman cross-motion. We overrule points one and two.

### The MUD's Summary Judgment Motion
### and
### Olmos and Guttman's Cross–Motion

In point three, Olmos and Guttman complain that the trial court erred in granting the MUD's motion for summary judgment and awarding the MUD $6,000 in attorneys' fees to be paid out of the interpled funds. They also complain of the denial of their cross-motion that the interpleader be adjudged improper.

Neither side contends that there are genuine issues of material fact. Therefore, we

decide whether either party is entitled to judgment as a matter of law.

The MUD argues that its interpleader action was proper and that it is entitled to recover its attorneys' fees. We agree.

■ The MUD established all of the elements necessary for a valid interpleader action. Rule 43 of the Texas Rules of Civil Procedure authorizes a defendant who receives multiple claims to property in its possession to join all claimants in the lawsuit and deposit the disputed property into the registry of the court. TEX.R.CIV.P. 43. An interpleading party is entitled to interpleader relief if three elements are met: (1) he is either subject to, or has reasonable grounds to anticipate, rival claims to the same fund or property; (2) he has not unreasonably delayed filing his action for interpleader; and (3) he has unconditionally tendered the fund or property into the registry of the court. *Savings & Profit Sharing Fund of Sears Employees v. Stubbs,* 734 S.W.2d 76, 79 (Tex.App.—Austin 1987, no writ). An innocent stakeholder is entitled to recover its attorney fees from the deposited funds if it has "a reasonable doubt either of fact or law as to which [claimant] is entitled to the fund." *See Givens v. Girard Life Ins. Co. of America,* 480 S.W.2d 421, 428 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). The award of attorneys' fees is within the trial court's sound discretion. *See Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank,* 763 S.W.2d 52, 56 (Tex.App.—Dallas 1988, writ denied).

■ It is undisputed that the MUD was subject to rival claims and unconditionally deposited the contested funds into the registry of the court without undue delay. The issue on appeal is whether the MUD had a reasonable doubt about which claimant was entitled to the funds so that the MUD was entitled to recover its attorneys' fees.

The MUD offered summary judgment proof of the demand letters from Olmos' and Pecan Grove's lawyers explaining the basis of their claims. There was no summary judgment proof refuting that the MUD received these letters. We have discussed the merits of the respective claims and find, as a matter of law, that the MUD had a reasonable doubt as to which claim was valid.

The MUD's doubt was evident in the November 1988 letter from the MUD to Guttman and Pecan Grove. The letter was before the court as an exhibit in Olmos and Guttman's response and cross-motion. In pertinent part, the letter stated:

1. Jose Zavala Olmos is entitled to reimbursement due to the assignment to him and the District's acknowledgment of same, subject to all items under the reimbursement agreement being taken care of to trigger reimbursement.

2. The reimbursement agreement provides that Ed Guttman, Trustee, is not entitled to be reimbursed until he conveys the Facilities to the District. That obligation was not assigned to Jose Zavala Olmos.

3. American General Investment Corporation took title to the water, sewer, and drainage facilities to serve the Greens when it took title to the land from Mr. Guttman.

4. American General has since deeded the land and assets to Pecan Grove Associates.

\*     \*     \*     \*     \*     \*

[B]ased upon the above facts, no reimbursement will be made to anyone for The Greens, Section 2, until the District receives a conveyance for the utilities in accordance with the reimbursement agreement.... *The District wants to make sure that anyone who may have any rights, title, or interest in and to the water, sewer, and drainage improvements to serve The Greens, Section 2, conveys such to the District.*

That doubt was reasonable:

The very purpose of interpleader is to allow an innocent stakeholder facing rival claims to let the courts decide who is entitled to the fund and thus avoid the peril of acting as judge and jury itself. To hold that a stakeholder in such a case must research the law and the facts and at its peril decide itself which claim is valid, rather than paying the fund into

the court for a judicial determination thereof, would be to compel the very thing interpleader was designed to avoid. *Gabler v. Minnesota Mut. Life Ins. Co.,* 498 S.W.2d 413, 418 (Tex.Civ.App.—Texarkana 1973, no writ).

Olmos argues that the MUD's interpleader was improper because the MUD itself was responsible for the competing claims by requesting the General Conveyance from Pecan Grove. When an interpleading party is responsible for the conflicting claims to the funds, the party is not entitled to attorneys' fees incurred in interpleading the claimants. *Brown v. Getty Reserve Oil, Inc.,* 626 S.W.2d 810, 815 (Tex. App.—Amarillo 1981, writ dism'd). Olmos' reliance on *Brown* is misplaced. The present case is unlike *Brown* where the stakeholder improperly created the fund which became the subject of conflicting claims. There was no evidence that Pecan Grove would not have made its competing claim but for the MUD's request for the General Conveyance.

Olmos next contends that there was no reasonable doubt as to the MUD's risk of double liability because the Water Code was clear that the MUD would not be liable for releasing the funds to Olmos. *See Davis v. East Texas Sav. & Loan Ass'n,* 163 Tex. 361, 354 S.W.2d 926, 931 (1962) (no reasonable doubt when statute shielded interpleading party with absolute immunity). Olmos asserts that the Water Code clearly establishes that purchasers, such as Pecan Grove, acquire absolutely no interest in utility facilities on their property. We have rejected the argument that the Water Code's Notice to Purchasers somehow vests title to the Facilities in the MUD. We find that the MUD would not have been statutorily immune to double liability had it paid Olmos without first resolving Pecan Grove's claim.

Finally, Olmos complains that the interpleader was improper because necessary parties that had an interest in the funds at issue were not joined. *See Chaison v. Chaison,* 136 S.W.2d 239, 244 (Tex. Civ.App.—Beaumont 1940, writ ref'd). Olmos argues that, if the MUD Notices to Purchasers and Restrictions did not reserve title to the MUD, then all of the subsequent purchasers of lots from Pecan Grove must hold title to a portion of the Facilities. Therefore, they would have an interest in the interpled funds. We hold that Pecan Grove stands in the shoes of the developer with respect to lot purchasers. The Restrictions excepts title to utility facilities in conveyances from the developer to lot purchasers. All necessary parties were before the court.

We find that the MUD established that its interpleader was valid as a matter of law. The trial court did not abuse its discretion in awarding the MUD its attorneys' fees. We note that the trial court could have awarded the MUD's attorneys' fees as costs to the losing parties, Olmos and Guttman. *See Beneficial Standard Life Ins. Co.,* 763 S.W.2d at 56. We overrule point three.

### The MUD's Cross–Point for Ten–Times Costs

By cross-point, the MUD complains that Olmos and Guttman filed this appeal for delay and without sufficient cause. Consequently, the MUD demands an award of ten times its total taxable costs. TEX. R.APP.P. 84.

The MUD asserts that Olmos and Guttman filed a frivolous appeal. The MUD complains that Olmos and Guttman assert in their brief that this is a case of first impression and yet contend that the MUD should have acted as judge and jury and resolved the competing claims on its own.

"In determining whether delay damages are appropriate, this court must review the record from the advocate's point of view at the time the appeal was taken to determine if reasonable grounds existed to believe that the case should be reversed." *Ambrose v. Mack,* 800 S.W.2d 380, 383 (Tex. App.—Corpus Christi 1990, writ denied). We impose damages only if the likelihood of a favorable result was so improbable as to make this an appeal taken for delay and without sufficient cause. *Id.*

Had Olmos and Guttman prevailed on appeal on their theory that the MUD Notices to Purchasers and Restrictions reserved title to the MUD, then the MUD's grounds for its interpleader would have been suspect. Olmos and Guttman may then have been able to avoid the significant deduction from the interpled funds for the MUD's attorneys' fees. Noting that the right to appeal is a "most sacred and valuable one," we find that the likelihood of a favorable result was not so improbable that this was an appeal taken for delay and without sufficient cause. *See In re Estate of Kidd,* 812 S.W.2d 356, 360 (Tex.App.— Amarillo 1991, writ denied). We overrule the MUD's cross-point.

In conclusion, we affirm the summary judgments in favor of Pecan Grove and the MUD and the denial of Olmos and Guttman's cross-motion.

BOWERS, J., not participating.