TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00185-CV







Phoenix Holdings, Ltd., Appellant



v.



Circle C Land Corp., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 97-01388, HONORABLE JOSEPH H. HART, JUDGE PRESIDING







 Phoenix Holdings, Ltd., (Appellant) appeals from a judgment recovered by Circle
C Land Corporation (Appellee) on its cause of action for declaratory judgment. We will affirm
the judgment.


THE CONTROVERSY


 Appellant agreed to buy and Appellee agreed to sell the latter's large real-estate
holdings known as "Circle C Ranch Subdivision." They reduced their agreement to a written
contract denominated "Purchase and Sale Agreement." The contract required a sale and purchase
of the subdivision in two parts.

 "Property One" consisted of all of Appellee's subdivision "developed or
contemplated to be developed for single-family residential purposes," together with an existing
swim center and golf course, all as more particularly described in an exhibit incorporated in the
Purchase and Sale Agreement. The purchase price for Property One was specified to be
$18,000,000, a sum subject to adjustment in certain particulars before the contract was
consummated.

 "Property Two" consisted of all of Appellee's remaining property, assets, rights,
privileges, benefits, and interests in "the remaining commercial portions" of the subdivision,
including without limitation the property more particularly described in an incorporated exhibit. 
The purchase price for Property Two was specified to be $34,000,000.

 The contract required consummation in separate "closings," the first on Property
One on a particular date and the second on Property Two some four months afterward. At each
closing, Appellee was obligated to deliver to Appellant an executed "General Assignment and Bill
of Sale" in a form incorporated in the contract as an exhibit. The parties consummated the
contract with respect to Property One; Appellee executed and delivered the required assignment,
the terms of which give rise to the present controversy. The parties did not consummate the
contract with respect to Property Two.

 Four municipal utility districts (MUDs) obtained, under as many "Utility
Construction Agreements," a right to acquire title to water, wastewater, and drainage facilities that
Appellee had erected on the two properties at its cost. (1) On the MUDs' acquiring legal title to the
facilities, Appellee was entitled to receive from the MUDs periodic payments (from MUD bond
revenues) until the purchase price for the facilities was paid and the MUDs' debt to Appellee
discharged. The periodic payments are sometimes referred to in the record as "reimbursement"
payments. The parties fell into dispute concerning (1) whether the Purchase and Sale Agreement
required Appellee to convey to Appellant the right to receive all such future MUD payments, as
they pertained to Property One, or only that part of the payments which pertained to the land in
Property One and the facilities that were "on or within" that land; and (2) whether the assignment,
properly interpreted, had actually transferred to Appellant a right to all or only a part of the
periodic MUD payments.

 Appellee initiated the present litigation to determine the dispute by declaratory
judgment. Appellant's answer included a counterclaim for declaratory judgment together with
other causes of action. On opposing motions, the trial court granted Appellee's motion for
summary judgment on its claim for declaratory relief and denied Appellant's motion for summary
judgment on its claims for declaratory relief and breach of contract. The summary judgment order
declares as follows:


As a matter of law, the Court finds that under the Purchase and Sale Agreement
and General Assignment and Bill of Sale, [Appellant] is only entitled to the MUD
[payments] for improvements which are both (1) on or within the land [in Property
One], and then (2) only to the extent such improvements pertain to that land.



 After Appellee withdrew its remaining causes of action, the trial court rendered a
final judgment on the same terms against which Appellant now assigns two points of error, as
follows: (1) the trial court erred in failing to conclude that Appellee's assignment included a right
to receive all the MUD payments that pertained to the land in Property One; and (2) the trial court
erred in failing to conclude that Appellee breached its contract obligation to convey to Appellant
all of Appellee's right to the MUD payments; or the contract was ambiguous in what it required
of Appellee, precluding judgment as a matter of law on motion for summary judgment.


DISCUSSION AND HOLDINGS


 Appellee's assignment to Appellant conformed to the exhibit incorporated in their
Purchase and Sale Agreement. The parties dispute, however, the proper interpretation of the
assignment. Appellee contends, and the trial court determined as a matter of law, that Appellee
assigned to Appellant a right to receive the MUD payments for the water, wastewater, and
drainage facilities only insofar as the facilities were (1) "on or within the land" of Property One
and (2) "pertained to" such land. Appellant contends the assignment transferred to Appellant a
right to receive the payments limited only by the qualification that the facilities "pertained to" the
land of Property One.

 The parties appear basically to agree that assignments are construed in accordance
with the rules for construction of contracts generally, the primary object being to ascertain and
accomplish the parties' intention--an intention derived from the words of the whole instrument
in light of the subject matter and surrounding circumstance, as these might bear on their
intention--while giving effect to all parts of the instrument. See 6A C.J.S. Assignments § 72, at
708-09 (1975).

 The assignment described as follows the properties transferred to Appellant: (2)


(i)  All buildings, structures, fixtures, equipment, facilities, parking areas, and
other improvements [the "Improvements"] located on those certain tracts of real
property . . . more particularly described on Exhibit A attached hereto and
incorporated herein by reference [the "Land"].


[Exhibit A describes twenty-two tracts of land


out of specified surveys]



* * * * *



(iii) All easements, rights, privileges and appurtenances pertaining to the Land and
the Improvements, including . . . utility construction agreements, rights to receive
reimbursement for the installation of gas, electric or other utilities, or other
development rights and benefits, to the extent such items pertain to the Land or the
Improvements (the "Appurtenances"). (3)


(iv) All of [Appellee's] right, title and interest in and to all amounts payable by any
municipal utility district with respect to the engineering, construction, and
installation of water, wastewater, drainage and other improvements on or within
the Land under any contract or agreement between [Appellee] and such municipal
utility districts to the extent such items pertain to the Land [the "MUD
Reimbursements"]. (4)


(v)  All of [Appellee's] right, title and interest in and to all contracts, leases, sales
contracts, agreements, . . . owned or held by or for the benefit of [Appellee] or
otherwise accruing, to the extent such items pertain to the Land and the
Improvements (the "Contracts").


(vi) All of [Appellee's] right, title and interest in and to all receivables, notes,
accounts, proceeds, instruments, certificates, or other writings evidencing the
same, . . . to the extent such items pertain to the Land, the Improvements, or the
Personalty (the "Receivables"). (5)


* * * * *



Without limiting the generality of the foregoing, the Property includes those items
more particularly described on Exhibit B attached hereto and made a part hereof.



 Exhibit B-2, incorporated in the assignment, provides as follows:


The following items are assigned and transferred to the extent such items pertain
to the Land or the Improvements


MUD Utility Construction Agreements



1. That certain Amended and Restated Utility Construction Agreement [between
Appellee and Circle C Municipal Utility District No. 1]


2. That certain Utility Construction Agreement [between Appellee and Municipal
Utility District No. 2]


3. That certain Utility Construction Agreement [between Appellee and Municipal
Utility District No. 3]


4. That certain Utility Construction Agreement [between Appellee and Municipal
Utility District No. 4].



(emphasis added). Appellee's right to the periodic payments derived from these Utility
Construction Agreements. (6)

 Appellant relies upon paragraphs (iii), (v), and (vi) of the assignment, together with
Exhibit B-2 transferring to Appellant title to the four Utility Construction Agreements from which
the right to the periodic payments derives. None of these contain the "on or within" restriction
imposed by the trial-court judgment. In Appellant's view, these provisions specifically address
the periodic-payments issue and therefore supersede the "on or within" restriction found only in
paragraph (iv) of the assignment--the provision upon which Appellee relies. See Forbau v. Aetna
Life Ins. Co., 876 S.W.2d 130, 133-35 (Tex. 1994) (contract provision specifically addressing
disputed issue supersedes general provision addressing same issue). Appellee rejoins that
paragraph (iv), containing the "on or within" restriction, controls the matter because it is the
specific provision contemplated by the rule of construction mentioned in Forbau. (We note also
that paragraph (i) of the assignment refers to "[a]ll buildings, structures, fixtures, equipment,
facilities . . . located on" the real property described in an incorporated exhibit [emphasis added]).

 We believe none of the competing provisions is entitled to controlling effect under
the rule of construction that words of general description yield to more specific words. Paragraph
(iv), containing the "on or within" restriction, describes generically the periodic payments, yet
nothing in the contract documents expressly connects those payments to the four Utility
Construction Agreements specifically identified in Exhibit B-2. Similarly, Exhibit B-2, relied
upon by Appellant, names the four Utility Construction Agreements but nothing in paragraphs
(iii), (v), and (vi) refers specifically to the periodic payments required by those agreements. There
is no connection between Exhibit B-2 and the Purchase and Sale Agreement except general
references in the latter to "all rights to receive reimbursement for the installation of . . . other
utilities," "all amounts payable by any municipal utility district," "all contracts," "all
agreements," and "all receivables."

 Taken together, the competing provisions are in part both general and specific
because they were intended to be so. The parties wished both to identify particular items while
using all-inclusive language to accomplish the overall purpose of assuring that Appellee transferred
and Appellant received all of the former's subdivision holdings in Property One, consistent with
the primary purpose of the whole transaction, unless specifically excluded from the sale and
purchase. It must be borne in mind that our interpretation of the contract language has the
objective of ascertaining the parties' intention and the rule that words of general description yield
to more specific words is not the only rule of contract construction designed to achieve that end.

 It is not contended that the restrictive provision ("on or within") found in paragraph
(iv) was inserted in the assignment by fraud, accident, or mistake. Indeed, it was sufficiently
important to have been included in the Purchase and Sale Agreement, as were the other provisions
quoted above, negotiated by the parties through their attorneys. (7) And being included in both the
Purchase and Sale Agreement and the assignment, the restriction must have had a purpose coming
within the parties' intentions and the mutual promises they made. If the restriction is nullified,
that purpose is defeated and the mutuality arrived at by negotiation is destroyed. If the restriction
is given effect, however, the primary purpose of the whole transaction, the Purchase and Sale
Agreement, and the assignment is still effectuated, and the remaining terms are easily susceptible
of a reasonable construction. In judging the parties' intention, one must remember that the
Purchase and Sale Agreement contemplated the conveyance of Property Two and Property One,
and the contract language was chosen accordingly.

 Appellant has not suggested what meaning the "on or within" restriction might
have, if it does not have the meaning it has in ordinary usage, or what purpose the restriction
might have had in the transaction if not the restrictive purpose evident in its very terms. Under
Appellant's suggested construction, the restriction simply has no meaning or effect.

 We are enjoined to interpret the contract in its entirety, to harmonize its various
provisions, and to reject where possible an interpretation that would render any provision
meaningless because it is presumed the parties intended each provision to have effect. See Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); R & P Enters. v. LaGuarta Gavrel & Kirk, 596
S.W.2d 517, 518 (Tex. 1980); 5 Corbin on Contracts § 24.34 at 248-54 (rev. ed. 1998); 4
Williston on Contracts, § 624 at 822-25 (3d ed. 1961).

 We hold the trial court did not err in failing to conclude that the assignment
transferred to Appellant a right to all the MUD payments that pertained to the land in Property
One. We therefore overrule Appellant's first point of error.

 In point of error two, Appellant contends the trial court erred in failing to conclude
that Appellee breached its contract obligation, found in the Purchase and Sale Agreement, to
transfer to Appellant all of Appellee's right to the MUD payments without the "on or within"
restriction, or the contract was ambiguous in that regard and the issue was not determinable as a
matter of law, requiring a reversal and remand of the cause to the trial court.

 The Purchase and Sale Agreement incorporated an Exhibit B attached to the
instrument. Paragraph (v) of the exhibit is identical in all material respects to paragraph (iv) of
the assignment quoted previously. The parties' contract thus contemplated an assignment of the
right to the periodic payments in the same language as that employed in the assignment. Both
instruments contained the "on or within" restriction. We have held above that the trial court did
not err in the construction it placed on the assignment. Consequently, the trial court did not err
in the construction it placed on the Purchase and Sale Agreement.

 We believe the Purchase and Sale Agreement and the assignment, each considered
together and as a whole, are not susceptible of two reasonable interpretations in the matter of the
MUD payments. The interpretation for which Appellant contends would deny any meaning and
effect to the "on or within" restriction. The construction placed upon the contract and assignment
by the trial court, on the other hand, gives the restriction meaning and effect while permitting the
entirety of those two instruments to have a reasonable interpretation that effectuates the primary
and general purpose of the whole transaction. See Lenape Resources Corp. v. Tennessee Gas
Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996) (if words of instrument can be given a definite
legal meaning, it is not ambiguous and can be construed as a matter of law); Dallas Hotel Co. v.
Lackey, 203 S.W.2d 557, 560 (Tex. Civ. App.--Dallas 1947, writ ref'd) (where doubt as to
meaning arises from the contract language and not from extrinsic circumstances, "the question as
to what the parties meant is for the Court and not the jury").

 We therefore overrule point of error two and affirm the trial-court judgment.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: March 4, 1999

Publish





* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The facilities were actually erected by another, but that is immaterial for purposes of this
appeal.
2. The emphasis is added in the quoted material.
3. The word "appurtenance" has a variety of possible meanings. See 6 C.J.S. Appurtenance
at 135-39 (1975). The particular meaning of the word does not appear to have any importance in
the present appeal because the word is defined in paragraph (iii) specifically to include "utility
construction agreements" and "rights to receive reimbursement for the installation of . . . other
utilities," the matters in dispute on appeal.
4. The periodic MUD payments were "payable," in the sense of owing, under an executory
contract at the time of the "closing" relative to Property One. See "payable" and "owe," Random
House Dictionary of the English Language (1967). The payments were not, however, immediately
owing or payable; that is to say, they were not "due" at the time of the "closing." Cf. infra, fn.
5.
5. The periodic payments had not become due at the time of the closing relative to Property
One. It is therefore difficult to understand how the word "receivables" can reasonably refer to
the periodic payments. See "receivables," Random House Dictionary of the English Language,
supra.
6. Absent an express restriction or reservation to the contrary, a conveyance of the MUD
Utility Construction Agreements would include, as an appurtenance necessary to the full
enjoyment of the thing conveyed, a right to the periodic payments owed by the MUD. See Olmos
v. Pecan Grove, 857 S.W.2d 734, 739-40 (Tex. App.--Houston [14th Dist.] 1993, no writ). In
the disputed assignment in the present appeal, there exist two express restrictions as discussed in
the text of the opinion: that the periodic payments "pertain" (1) to the land in Property One and
(2) to facilities "on or within" the land of Property One.
7. Appellant contends that a "summary sheet," shown to Appellee's agent before the contract
was executed, contained a "Sales Proposal" stating that "all receivables" and "all municipal utility
district bond proceeds" would be sold to Appellant, as does Appellee's inter-office memorandum. 
Moreover, Appellee testified on deposition that Appellant agreed to that part of the transaction in
a conversation over breakfast between the parties' agents. We have examined the two documents;
they are both in the nature of offers, and one is designated as such. It is evident that the content
of these documents and conversation merged in the contract executed some four months later. See
17A C.J.S. Contracts § 381 at 445-49 (1963).



ary
and general purpose of the whole transaction. See Lenape Resources Corp. v. Tennessee Gas
Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996) (if words of instrument can be given a definite
legal meaning, it is not ambiguous and can be construed as a matter of law); Dallas Hotel Co. v.
Lackey, 203 S.W.2d 557, 560 (Tex. Civ. App.--Dallas 1947, writ ref'd) (where doubt as to
meaning arises from the contract language and not from extrinsic circumstances, "the question as
to what the parties meant is for the Court and not the jury").

 We therefore overrule point of error two and affirm the trial-court judgment.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: March 4, 1999

Publish





* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The facilities were actually erected by another, but that is immaterial for purposes of this
appeal.
2. The emphasis is added in the quoted material.
3. The word "appurtenance" has a variety of possible meanings. See 6 C.J.S. Appurtenance
at 135-39 (1975). The particular meaning of the word does not appear to have any importance in
the present appeal because the word is defined in paragraph (iii) specifically to include "utility
construction agreements" and "rights to receive reimbursement for the installation of . . . other
utilities," the matters in dispute on appeal.
4. The periodic MUD payments were "payable," in the sense of owing, under an executory
contract at the time of the "closing" relative to Property One. See "payable" and "owe," Random
House Dictionary of the English Language (1967). The payments were not, however, immediately
owing or payable; that is to say, they were not "due" at the time of the "closing." Cf. infra, fn.
5.
5. The periodic payments had not become due at the time of the closing relative to Property
One. It is therefore difficult to understand how the word "receivables" can reasonably refer to
the periodic payments. See "receivables," Random House Dictionary of the English Language,
supra.
6. Absent an express restriction or reservation to the contrary, a conveyance of the MUD
Utility Construction Agreements would include, as an appurtenance necessary to the full
enjoyment of the thing conveyed, a right to the periodic payments owed by the MUD. See Olmos
v. Pecan Grove, 857 S.W.2d 734, 739-40 (Tex. App.--Houston [14th Dist.] 1993, no writ). In
the disputed assignment in the present appeal, there exist two express restriction