Opinion issued June 4, 2009









Opinion issued June
4, 2009

 

 








 



     

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 

NO. 01-06-00798-CV




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



FCLT LOANS ASSET CORP. AND TIMOTHY J. BLAIR, 

CLASS REPRESENTATIVE, Appellants

 

V.

 

FIRSTCITY FINANCIAL CORPORATION, Appellee

 

 



On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 2005-04492








 

 



O P I N I O N

 

          Before its failure in the
early 1990s, First City Bancorporation of Texas, Inc. (First City), acting as trustee of its employee retirement trust, purchased a number of group annuity
contracts (GACs) to replace the defined benefits formerly available to its
employees under its employee retirement benefit plan.  In 2001, Prudential
Insurance Company (Prudential), one of the insurance companies from which First City purchased GACs, converted from a mutual company to a stockholder-owned company,
a process known as demutualization.  This conversion resulted in the
distribution of stock worth more than $ 17 million (the demutualization
proceeds), in exchange for the membership interest in the two GACs.[1]
 

A dispute over the
ownership of these demutualization proceeds arose.  First City Financial
Corporation (FCFC) and FCLT Loans Asset Corporation (FCLT)—two entities created
in connection with First City’s bankruptcy—and Timothy J. Blair, as
representative for a class of the former First City retirement plan
participants, each has claimed exclusive entitlement to the proceeds, and filed
cross-motions for summary judgment on the issue in the trial court.  The trial
court granted summary judgment in favor of FCFC.  Holding that none of the
appellants is entitled to the demutualization proceeds as a matter of law
without a determination of ownership from the trustee of the benefit plan—who
holds legal title to the GACs—we reverse the judgment and remand the cause to
the trial court for further proceedings consistent with this opinion. 

Background

          In 1983, First City established and funded a defined benefit retirement plan[2]
for its employees.  First City placed the plan in a trust and appointed First
City National Bank of Houston (the Houston Bank) to serve as the trustee.  In
its capacity as trustee, the Houston Bank administered the plan, and held and
invested First City’s contributions to the plan.  

          Three years later, First City decided to terminate the retirement plan and the trust.[3] 
To replace the benefits promised under the plan, the Houston Bank, acting in
its capacity as trustee, purchased two GACs[4] from Prudential in
accordance with ERISA requirements.  See 29 U.S.C. § 1341(b)(3)(A)(i)
(2000).  The GACs name as “Contract-Holder” “First City National Bank of
Houston As Trustee of the First City Bancorporation Employee Retirement Trust,”
and provide that:

The Contract-Holder will be the sole representative
under this contract of each person and organization with an interest in the
Plan.  The Prudential will deal with the Contract-Holder except to the extent
the Contract-Holder has directed The Prudential to do otherwise and The
Prudential has consented thereto.  The Prudential will be entitled to rely on
any action taken or omitted by or on behalf of the Contract-Holder pursuant to
the terms of this contract.  The Contract-Holder at any time may, with the
consent of The Prudential, appoint a successor Contract-Holder.  Any successor
Contract-Holder will have all the rights, duties, and obligations of the
Contract-Holder; provided, however, that if the Contract-Holder notified The
Prudential that it will cease to exist or cease to perform the duties of the
Contract-Holder hereunder and no successor Contract-Holder is appointed, this
contract shall nevertheless remain in full force and effect until the date on
which there ceases to be any further Pension or other payments payable in
accordance with the terms of this contract.  That date will be the date as of
which this contract terminates.

 

          In 1992, the Federal
Deposit Insurance Corporation (FDIC) declared the Houston Bank insolvent and
appointed itself receiver.  The FDIC created New First City, Texas—Houston,
N.A. (New Houston Bank) to take possession of certain assets of the Houston
Bank, including its trust department.  

Shortly after the
receivership, First City became the subject of an involuntary Chapter 11
bankruptcy proceeding.  See 11 U.S.C. § 303.  Two entities created in
connection with First City’s bankruptcy reorganization plan still exist—FCFC
and FCLT.

          Following confirmation of
the plan, FCFC’s Portfolio Committee adopted resolutions concerning the
administration of the Houston Bank’s employee benefit plans.  The document
memorializing those resolutions recites:

WHEREAS,
the [liquidating trust] was established pursuant to the Confirmation Order and
is a successor in interest and assignee of [the Houston Bank] under the Joint
Plan of Reorganization, pursuant to which [the Houston Bank] transferred to
[the liquidating trust] substantially all of its non-cash assets, including,
but not limited to, its obligations as related to the Plans; and the trust
accounts for such Plans and related trusts, along with the obligation to serve
as trustee and/or investment manager under the terms of the trust agreements,
to the extent such obligation remained, were transferred to Texas Commerce Bank
National Association as a result of the Purchase and Assumption Agreement dated
as of February 12, 1993 among the FDIC as Receiver of New First City,
Texas—Houston, N.A., the FDIC, and Texas Commerce Bank National Association; 

NOW,
THEREFORE, BE IT

RESOLVED
that Chase Bank of Texas (formerly Texas Commerce Bank National Association)
be, and it hereby is, confirmed, effective July 3, 1995, as Trustee and
Investment Manager under the terms of the aforementioned Plans and related
trust agreements . . . .

Through a series of mergers and other
transactions, JPMorgan Chase Bank, N.A. (JPMorgan) currently holds the two GACs
purchased by the Houston Bank in its capacity as trustee, but JPMorgan’s name
does not appear on the GACs as the contract-holder, and the Houston Bank
remains the named contract-holder on their face.     

Nearly a decade after First City’s bankruptcy, Prudential “demutualized”[5] by reorganizing its
business from a mutual insurance company to a stock insurance company.  As part
of the demutualization, Prudential exchanged its policyholders’ membership
interests for newly issued common stock.  In this case, Prudential exchanged
the membership interests attached to the two Prudential GACs for 321,211 shares
of stock.  

When Prudential attempted
to locate the successor to “First City National Bank of Houston As Trustee of
the First City Bancorporation Employee Retirement Trust”—the named contract
holder—FCLT, FCFC, and JP Morgan made competing claims to ownership of the
demutualization proceeds.  Prudential brought this interpleader action after it
found that it could not satisfactorily resolve the question of which entity was
the successor trustee, and, as such, entitled to claim the proceeds.  

FCLT, FCFC, and JPMorgan
answered.  FCFC also brought a counterclaim, asking that it be declared owner
of the demutualization proceeds.  In its answer, JP Morgan clarified that it
did not claim the funds in its individual corporate capacity, but only in its
capacity as successor trustee of the First City employee retirement trust. 
JPMorgan acknowledged that, as successor trustee, it was the proper recipient
of the demutualization proceeds as “contract holder” under Prudential’s plan of
reorganization.  In addition, JPMorgan filed a petition invoking the trial
court’s jurisdiction under the Texas Trust Code, asking for construction of
trust provisions and determination of other issues relevant to the disbursement
of the Prudential stock, specifically: (1) to whom the demutualization proceeds
should ultimately belong; and (2) whether the event that produced the
demutualization proceeds is an “actuarial error” within the meaning of
applicable language in the trust.  JP Morgan also petitioned for joinder of
Timothy J. Blair, a former First City employee, to serve as representative of a
certified class of the former plan participants covered by the GACs.[6] 


The trial court addressed
Prudential’s petition in interpleader and an “Agreed Emergency Motion for
Immediate Release of Interpled Property” to JP Morgan, “as successor trustee of
First City Bancorporation Employee Retirement Trust,” which the trial court
considered as an unopposed request for re-registration of the interpled account
and granted.  Shortly thereafter, the trial court signed an order discharging
Prudential from the suit and allowing it to recover its costs and attorney’s
fees from JP Morgan, as successor trustee.  In addition, the trial court
amended its re-registration order to authorize JP Morgan to serve as “Successor
Trustee of the Trust, with all of the rights, powers and authority provided
under the Trust Agreement (as amended) which established the Trust and under
applicable law.”[7] 

Blair, on behalf of the
retirement plan participants, FCFC, and FCLT all filed cross-motions for
summary judgment, each claiming—to the exclusion of the others—entitlement to
the demutualization proceeds as a matter of law.  JP Morgan did not move for
summary judgment, but did file an omnibus response to the other parties’
motions.  The trial court denied FCLT and Blair’s motions, and granted FCFC’s
motion, and rendered judgment that FCFC was owner of the demutualization
proceeds.  This appeal followed.

DISCUSSION

Blair, as class
representative, and FCLT each claim that the trial court erred in granting
summary judgment in favor of FCFC declaring its entitlement to the demutualization
proceeds as a matter of law.  

Standard of Review

We
review a trial court’s summary judgment de novo.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accid. Ins. Co. v. Knott, 128 S.W.3d
211, 215 (Tex. 2003).  When reviewing a summary judgment, we take as true all
evidence favorable to the nonmovant, and indulge every reasonable inference and
resolve any doubts in the nonmovant’s favor.  Dorsett, 164 S.W.3d at 661; Knott, 128 S.W.3d
at 215; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Under Texas Rule of Civil Procedure 166a(c), the party moving for summary
judgment bears the burden of showing that no genuine issue of material fact
exists and that it is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Knott,
128 S.W.3d at 215–16.  When all parties move for summary judgment and the trial
court grants one motion and denies the others, the reviewing court considers
the summary judgment evidence presented by all sides, determines all questions
presented, and if the reviewing court determines that the trial court erred,
renders the judgment the trial court should have rendered.  See Dorsett, 164 S.W.3d at 661; FM Props.
Operating Co. v. City of Austin, 22 S.W.3d
868, 872 (Tex. 2000).

          Propriety of summary
judgment ruling

          Before FCLT, FCFC, and
Blair moved for summary judgment, the trial court had already signed an order
holding that JP Morgan, as successor trustee, was the contract holder of the
GACs, and dismissing Prudential from the lawsuit.  By virtue of its status as
contract holder, JP Morgan, therefore, is the legal owner of the
demutualization proceeds as a matter of law.  For this reason, neither Blair,
as class representative, FCFC, nor FCLT is entitled to the demutualization proceeds
as a matter of law.  Accordingly, we hold that the trial court erred in
granting summary judgment in favor of FCFC on that issue.

          When the trial court, with
Prudential’s agreement, declared JP Morgan as successor trustee and contract
holder, the nature of the lawsuit changed.  JP Morgan did not merely slip into
Prudential’s shoes in the interpleader action.  An interpleader is a suit to
determine a right to property held by a disinterested third party who is in
doubt about ownership and who, therefore, deposits the property with the trial
court to permit interested parties to litigate ownership, letting the court
decide who is entitled to the funds and thereby avoiding the peril of deciding
ownership itself.  Clements v. Minn. Life Ins. Co., 176 S.W.3d 258, 263
(Tex. App.—Houston [1st Dist.] 2004, no pet.); Olmos v. Pecan Grove Mun.
Util. Dist., 857 S.W.2d 734, 741 (Tex. App.—Houston [14th Dist.] 1993, no
writ).  It is undeniable that JP Morgan, as the successor trustee, holds legal
title to the GACs and is responsible for the distribution of their proceeds.  

          JP Morgan’s own pleadings,
which invoke jurisdiction under the Texas Trust Code and acknowledge that
proper disbursement of the demutualization proceeds requires an interpretation
of trust language, repudiate any suggestion that JP Morgan lacks an interest in
the proceeds.  In its summary judgment response, JP Morgan stressed that this
is a trust case and urged the trial court to construe the trust instrument to
ascertain the proper beneficial owner or owners of the demutualization
proceeds.  Yet, without a request for affirmative relief from JP Morgan, the
trial court was not in a position to make the rulings JP Morgan and the parties
to this appeal sought assistance in determining, i.e., the ownership of these
demutualization proceeds beyond the legal title vested with the trustee.

          The Texas Trust Code
accords jurisdiction over proceedings to 

(1)     construe a trust instrument;

(2)     determine law applicable to a trust
instrument;

. . .

(4)     determine the powers, responsibilities,
duties, and liability of a trustee;

(5)     ascertain beneficiaries; [and]

(6)     make determinations of fact affecting the
administration, distribution, or duration of a trust . . . .

Tex. Prop.
Code Ann. § 115.001(a)
(Vernon 2007 & Supp. 2008).  These are the provisions invoked by JP Morgan
and the provisions under which JP Morgan must proceed.  The other parties’
summary judgment motions were not properly before the court insofar as a
determination of the legal ownership of the interpled funds, and the record as
it stands is not sufficient to yield an unequivocal answer to the question of
the ownership of the proceeds beyond the legal title holder.

Conclusion

We hold that JPMorgan, as
successor trustee, is the legal owner of the interpled demutualization proceeds
as a matter of law, and the trial court thus erred in granting summary judgment
in favor of FCFC on that issue.  Because the trustee’s participation is
necessary to determine the appropriate disbursement of the demutualization
proceeds, in consideration of the competing parties’ interests and the status
of the annuities purchased by the Plan, we deny the parties’ agreed motion to
abate this appeal, reverse the judgment and remand the cause to the trial court
for further proceedings consistent with this opinion.  All other pending
motions are dismissed as moot.

 

                                                                   Jane
Bland

                                                                   Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland.

 









[1] The parties agreed that the stock should be liquidated to its cash
value while the interpleader action was in the trial court.  

 





[2] A defined benefit retirement plan consists of a
general pool of assets upon which the employer bears the entire investment risk
and must cover any underfunding as the result of a shortfall that may occur
from the plan’s investments.  Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439–40, 119 S. Ct. 755, 761 (1999).  Conversely, if the defined benefit plan is
overfunded, the employer may reduce or suspend his contributions.  Id. at 440, 119 S. Ct. at 761.  Upon retirement, the employee is entitled to a fixed
periodic payment under the terms of the plan.  Id. at 439, 119 S. Ct. at 761.





[3] 
 First City discovered that the plan was overfunded, and took
this action to recoup the surplus.





[4] “Annuities are contracts under which the purchaser
makes one or more premium payments to the issuer in exchange for a series of
payments, which continue either for a fixed period or for the life of the
purchaser or a designated beneficiary.”  NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 254, 115 S. Ct. 810, 812 (1995).





[5] Demutualization is the process of converting from a
mutual insurance company (which is owned by policyholders) to a stock insurance
company (which is owned by outside shareholders).  Black’s Law Dictionary 445 (7th ed.
1999); see also Bank of N.Y. v. Janowick, 470 F.3d 264, 267 (6th
Cir. 2006); James A. Smallenberger, Restructuring Mutual Life Insurance
Companies: A Practical Guide Through the Process, 49 Drake L. Rev. 513, 516 (2001).





[6]  JPMorgan declined to participate in this appeal. 

 





[7]
At Blair’s request, the trial court also added a
statement that the order would “not prejudice the ability of any party to
contend that the Trust terminated at some previous time.”